WARREN ACKERMAN

*v.*

JOSEPH A. HALSEY et al.

1. Where the receiver of an insolvent bank refuses to bring suit, a creditor and stockholder thereof may, for the benefit of himself and of such other creditors and stockholders as elect to join him, maintain a suit against the president and directors for gross official neglect and mismanagement, whereby the bank was financially ruined.

2. Particular instances of official misfeasance and carelessness, which standing alone might not fix personal liability, are sufficient, when connected with general allegations of official misconduct and culpable negligence, to sustain a bill in such case on general demurrer.

3. That some of the defendants have been directors longer than others is no ground of demurrer, because the court can discriminate between them, and hold those elected recently only liable for losses incurred during their term of office.

4. Damages for such negligence may be assessed in equity in a case where an adequate remedy at law does not exist.

Bill for relief. On general demurrer.

*Mr. J. W. Taylor,* for Joseph A. Halsey, Joseph S. Halsey, George A. Halsey, Edward H. Wright and Lewis C. Grover.

*Mr. A. P. Condit,* for William Clark.

*Mr. J. Henry Stone,* for Henry C. Howell.

*Mr. Cortlandt Parker,* for Stephen H. Condict.

Ackerman v. Halsey.

*Mr. Carl Lentz*, for Joseph Hensler.

*Mr. J. H. Ackerman*, for complainant.

The Chancellor.

The bill is filed by Warren Ackerman, a creditor and stockholder of the Mechanics National Bank of Newark, against the persons who were, at the time of the failure of that bank, its directors. The receiver is also a defendant. The suit is brought for the benefit of the complainant and all other creditors and stockholders of the corporation who may come in and contribute to the expenses of the litigation. The bill alleges that the bank is, and for more than fifteen years before the filing of the bill was, a corporation under the national banking act; that seven of the defendant directors, Joseph A. Halsey, Stephen H. Condict, George A. Halsey, Lewis C. Grover, Oscar L. Baldwin, William Clark and Edward H. Wright, were duly elected to their offices, first, in 1873, another, Joseph S. Halsey, in 1878, and the other two, Henry C. Howell and Joseph Hensler, in 1879, and that each of the ten duly accepted the office, and immediately after his election took and filed the oath prescribed by the act that he would, so far as the duty devolved on him, diligently and honestly administer the affairs of the bank &c.; that from year to year, from the time of their first election down to the time of the failure of the bank, they were duly and regularly elected directors and took and filed that oath; that they are still directors of the bank, and are the sole surviving ones; that they were its directors and managers while its money and funds were being abstracted and misapplied by the cashier, as stated in the bill; that the bank failed in October, 1881; that its capital stock was $500,000, divided into ten thousand shares of $50 each; that the complainant before 1873 became, and still is, the owner of one hundred and fifty-five shares of stock, and continued to be so by reason of his reliance on the fact that the defendant directors were such, and on their reports published from time to time from the organization of the bank, of the financial condition of the institution; that these reports, which were signed by them or by some of

them, stated in substance that the capital was unimpaired, and that the bank had also a large surplus over and above the payment of its debts and liabilities, and was in a sound and solvent condition, while in fact it had no surplus for several years before its failure, but was insolvent. The bill also states that if the defendant directors had discharged their duties as they were legally bound to do, the most ordinary inspection of and examination into its affairs would have revealed to them its true condition, and the fact of the abstraction and misappropriation of its funds by its cashier, and that it was expressly the duty of the president, who was Joseph A. Halsey, to exercise a more constant, immediate and personal control and supervision of its affairs than was required of the other directors. It then proceeds to set forth in detail the various duties of the president, and states that he was annually paid a salary of $3,000 by the bank for his services. It also in like manner sets forth the duties of the directors, and avers that they had at all times the fullest opportunities and facilities for, and abundant means of honestly and diligently performing their duties, and of knowing the exact condition of the affairs of the bank and of administering them honestly and diligently, as required by their oath, and of preventing the loss and injury which the bank sustained, and that a very moderate exercise and performance of the duties expected and required of them would have prevented the ruin of the bank, and the consequent injury to the complainant, as stated in the bill; that the defendant, the president, and each of the other directors, utterly failed and neglected to perform their official duties, and wholly omitted, without any reasonable excuse, to give any reasonable or proper attention to the business of the bank, and the care and management of its property, affairs and concerns, and, in consequence of such neglect, the bank has been utterly ruined by having its funds abstracted and misapplied by its cashier, and its stock rendered worthless, to the injury of the complainant and its other creditors; that the president was so grossly neglectful of his duties as president, and so culpably delinquent in the honest and diligent management of his trust, that he utterly neglected to perform his duties, and most negli-

gently permitted the cashier to have absolute control of the affairs of the bank, and to use and lend its moneys and assets as he saw fit, according to his own will and pleasure, and without having required of him any security for the faithful and honest performance of his duties, and that the cashier, encouraged and aided by such negligence of the president, wrongfully abstracted and misapplied the money and assets of the bank to an amount exceeding $2,000,000, which has completely ruined the bank and rendered the stock worthless; that the defendant directors did not honestly and diligently administer the affairs of the bank, but, on the contrary, suffered and most negligently permitted its money, property and effects to be in the possession and under the control of dishonest and incompetent persons, without having any security for the honest and faithful discharge of the duties expected and required of such persons, and carelessly permitted the money, property and effects of the bank to be stolen, wasted and squandered, to the ruin of the bank and injury of the complainant and all the creditors of the bank; that it was their duty to employ only such persons as were competent and honest to serve as officers of the bank, and to take from all persons so employed adequate security for the faithful performance of their duties, but they failed to discharge and neglected that duty; that the president was elected and kept in office and paid for his services (which, the bill says, were merely nominal) for more than ten years before the failure of the bank, although the directors knew he was incompetent to discharge the duties of the office, or to give such personal attention to the business of the bank as the office required, and that they refused to remove him or give him proper assistance; that they employed a person as cashier who abstracted and willfully misappropriated its funds to the extent of over $2,000,000, and permitted him to have unrestrained control of all the money and assets of the bank, without taking from him or requiring him to give any security for the faithful performance of his duties as cashier; that the only security ever required of him, as the complainant is informed and believes, was a bond of $20,000, which was "allowed to become outlawed through not being renewed for fifteen years;"

and that they did not keep or cause to be kept correct books of account of all the affairs of the bank, but, on the contrary, suffered the accounts to be falsified by false and deceptive entries through negligently omitting to examine the books or cause them to be examined properly. The bill then specifies certain false and fraudulent entries of $600,000, readily detectable, made to deceive the bank examiner, and states that almost the entire amount of the funds of the bank abstracted by the cashier was concealed on its books by him by means of entries of false charges, the falsity of which could very readily have been discovered; that the defendant directors were satisfied with and accepted as final, without verification and without any examination as to their truthfulness, the statements of the cashier; that without any knowledge as to whether the bank was solvent or not, they declared and paid dividends on the stock from May 1st, 1880, when the bank was, in fact, insolvent; that they permitted irresponsible persons to overdraw their accounts to a large amount without security, whereby large sums of money were lost to the bank, and negligently permitted the money of the bank to be lent to irresponsible persons without adequate security, by reason whereof the money lent was lost; that they permitted false reports, showing that the bank was in a solvent, flourishing condition, to be made and transmitted to the comptroller of the currency, and caused them to be published up to the 6th of October, 1881, and that at no time was there had by the defendant directors, or under their direction, a careful, thorough and complete examination of the affairs of the bank. The bill states that in October, 1881, the comptroller of the currency appointed the receiver, and that, by reason of the insolvency of the bank, it became necessary for the comptroller to make an assessment of the full amount of the par value of the stock upon the stockholders in order to pay the depositors of the bank; that the assessment was made in November, 1881, through the receiver, and that the complainant was compelled to pay, as his assessment, $7,839.17. The complainant alleges that he has, by reason of the misconduct and mismanagement of the defendant directors, set forth in the bill, sustained damage to the amount of

$15,589.17, with interest, and that each of the stockholders has sustained damage to an amount equal to double the par value of his or her stock. The bill states that before the beginning of this suit the complainant requested the receiver to commence and prosecute proceedings against the president and directors, to recover from them the damages which the bank and the stockholders had sustained by reason of the negligence and official misconduct of the president and directors, but he refused to do so. The prayer of the bill is that the damages of the creditors and stockholders in the premises may be ascertained, and the defendant directors adjudged to pay them to the receiver for the benefit of the creditors and stockholders; or that the complainant may recover against them his damages as a stockholder, and that the other creditors and stockholders who may come in may have such relief in the premises as they may be entitled to. The defendant directors have all filed general demurrers.

Under these demurrers are presented the questions whether this court has jurisdiction of the case; whether, if it has, the allegations of the bill (which, on demurrer, are to be taken as true) are sufficient to entitle the complainant to the relief which he seeks; and whether, as to three of the defendants, Messrs. Joseph S. Halsey, Howell and Hensler, there is not a misjoinder, seeing that the period of their directorship is shorter by several years than that of the others, and the bill seeks relief against all, without discrimination or distinction.

That the subject of this litigation is within the jurisdiction of this court, will admit of no question. The suit is brought by a creditor and stockholder of the bank against the directors, to obtain redress for the waste of the entire capital and surplus of the bank, whereby he has been subjected to loss as a creditor of the bank, and has, as a stockholder, lost not only his stock, but also a sum of money equal to its par value. The ground of the claim is that the directors utterly neglected to discharge any of the duties of their office. For such a wrong there is a remedy in equity. For any willful breach of their trust or misapplication of the corporate funds, or for any gross neglect of, or inattention to, their official duties, directors are

liable in this court. *Field on Corp.* § *173; Ang. & Ames on Corp.* § *312; Citizens Loan Assoc.* v. *Lyon, 2 Stew. Eq. 110; Robinson* v. *Smith, 3 Paige 222; Citizens Build. Assoc.* v. *Coriell, 7 Stew. Eq. 383; Brinckerhoff* v. *Bostwick, 88 N. Y. 52; Trustees* v. *Bosseiux, 3 Fed. Rep. 817.* And the liability is to the corporation in the first instance, where the corporation is capable of acting; but if it refuses to do so, then a person aggrieved may bring the suit. If the corporation be insolvent and its affairs in the hands of a receiver, he may maintain the litigation. If he refuses or is himself involved, a person aggrieved may sue. *Chester* v. *Halliard, 7 Stew. Eq. 341; Brinckerhoff* v. *Bostwick, ubi supra.* That is to say, primarily the corporation, or, if insolvent, its representative, must sue; but in case of their disability or refusal, a person aggrieved may bring the suit, making the corporation or its representative a defendant. Here the corporation is insolvent and there is a receiver. Under the national banking law, he would have been the proper person to bring the suit if he would. *Conway* v. *Halsey, 15 Vr. 462; Brinckerhoff* v. *Bostwick, ubi supra.* He, however, refuses to do so. The bill states, generally, that the defendant directors have utterly neglected to discharge their duty in every essential respect. It avers that they "had the fullest opportunities and facilities for, and abundant means of, honestly and diligently performing their duties, and of and for knowing at all times the exact condition of the affairs of the bank, and of and for administering its affairs honestly and diligently as required by their oath, and for preventing the loss and injury complained of, and that a very moderate exercise and performance of the duties expected and required of them would have prevented the ruin of the bank and the consequent injury to the complainant; but that they utterly failed and neglected to perform their official duties and wholly omitted, without any reasonable excuse, to give any reasonable or proper personal attention to the business of the bank and the care and management of its concerns; and that in consequence of such neglect, the bank has been utterly ruined by having its funds abstracted and misapplied by its cashier, and its stock rendered worthless, to the in-

jury of the complainant and its other creditors." It proceeds to state particular derelictions of duty. These are the negligent abandonment of the control of the whole of the affairs of the bank to the cashier, without requiring any security from him for the honest and faithful performance of his duties, by which means the funds and property of the bank were abstracted and misapplied by him to the amount of over $2,000,000—the complete ruin of the bank; carelessly permitting the money, property and effects of the bank to be in the possession and under the control of dishonest and incompetent persons, without security; carelessly permitting the property, money and effects of the bank to be stolen, wasted and squandered; employing for many years an incompetent person for president; permitting the accounts to be falsified; accepting the cashier's false statements of the condition of the bank, without examination as to their truth or correctness; paying dividends when the bank was insolvent, without seeking to know its true condition; negligently permitting the money of the bank to be lent to irresponsible persons, without adequate security, to the loss of the bank; permitting irresponsible persons to overdraw their accounts, without security, whereby the bank lost large sums of money; accepting and certifying and publishing the false reports of the cashier to the comptroller of the currency, and never making, or causing to be made, any careful, thorough or complete examination of the affairs of the bank, so as to know whether its affairs were being honestly and diligently administered.

As a general rule, the directors of a corporation are only required, in the management of its affairs, to keep within the limits of its powers, and to exercise good faith and honesty. They only undertake, by virtue of their assumption of the duties incumbent on them, to perform those duties according to the best of their judgment and with reasonable diligence, and a mere error of judgment will not subject them to personal liability for its consequences. And unless there has been some violation of the charter or the constating instruments of the company, or unless there is shown to be a want of good faith, or a willful abuse of discretion, or negligence, there will be no personal liability

They are personally only bound in the management of the affairs of the corporation to use reasonable diligence and prudence, such as men usually exercise in the management of their own affairs of a similar nature. *Field on Corp.* §§ *169, 171; Ang. & Ames on Corp.* § *314; Spering's Appeal, 71 Pa. St. 1; Overend & Gurney Co., L. R. (5 H. of L.) 480; Hodges* v. *N. E. Screw Co., 1 R. I. 312; Citizens, Building Assoc.* v. *Coriell, 7 Stew. Eq. 383.* But they are personally liable if they suffer the corporate funds or property to be wasted by gross negligence and inattention to the duties of their trust. *Robinson* v. *Smith, ubi supra; Citizens Building Assoc.* v. *Coriell, ubi supra.* The case made by the bill is one of absolute neglect by the defendant directors of all the essential duties of their office. Conceding that the specific violations of duty pointed out might not of themselves, if they stood alone, suffice to fix personal liability, in connection with the general statement and charge of absolute neglect of all essential duties, they obviously assume a different character, for the allegations are to be taken all together, and the specifications are to be considered in the light of the general statement. The allegations of the bill are sufficient to fix personal liability upon the directors. The case made by them is one of the most absolute and unqualified inattention and neglect. If the case made by the bill is not sufficient to fix personal liability, then no neglect of duty, however gross and extreme, will render directors personally liable.

It is urged that the bill, while it states that false reports of the solvency and flourishing condition of the bank were made from the time of its organization, also states that the bank was insolvent during all that time; and it is urged that if it be true that the bank was in fact insolvent from its organization, no harm was done to the complainant by the false reports. But the statement of the bill is not that the bank was insolvent from the beginning, but for several years before its failure. The injury done by false reports to the creditors and stockholders is, that persons are led to give the bank credit, perhaps, to their ultimate loss, and that of the stockholders. The false reports work injury to the stockholders in another way also. They not only

disarm suspicion, but inspire them with confidence in the management of the affairs of the institution, and so induce them to keep the directors in office until the disaster comes and the bank is, perhaps, utterly ruined.   They also avert the scrutiny of the comptroller of the currency.   It is also urged that the statement that the cashier's bond was barred by limitation, because not renewed for fifteen years, is on its face a misstatement from mistake of law.   But the statement is an immaterial one ; the charge (and allegation) in connection with which it is made is, that the directors required no security of the cashier.

It remains to consider the objection made by Messrs. Joseph S. Halsey, Howell and Hensler, that the bill charges misconduct which occurred before they were members of the board, and hence they claim that it is as to them multifarious.   But in a bill of this peculiar character, where the management of the affairs of a corporation, through a series of years, is the subject of litigation, and it appears on the face of the bill when the administration of each director began, the objection in question is not possessed of much weight.   Each director will answer only for the period of his administration, and in making its decree the court will of course discriminate between those who are culpable and those who are not. *Citizens B. & L. Assoc.* v. *Coriell, ubi supra.*   In *Charitable Corp.* v. *Sutton, 2 Atk. 400,* a similar objection was made and considered.   The suit was brought to be relieved against the defendants, fifty in number, who were either committeemen or in other offices of the corporation, and to obtain satisfaction for a breach of trust, fraud and mismanagement.   It was there urged that the court could make no decree against the defendants which would be just, for it was said that every man's attendance or omission of his duty was his own default, and that each particular person must bear such a proportion as would be suitable to the loss arising from his particular neglect, which made it (it was argued) a case out of the power of the court.   The objection was not sustained.   Lord Hardwicke dismissed the bill as to some of the defendants.   As to others, he decreed that they were liable in the first place, and their associates secondarily.

Another objection is made that this court cannot assess dam-

ages for negligence.   That proposition is not true where there is no adequate remedy at law.   There can be no question that this court will assess damages against a trustee for culpable negligence in the performance of his duty, whereby he failed to receive such profits upon the trust estate as he otherwise would have done.   *Osgood* v. *Franklin, 2 Johns. Ch. 1, 14 Johns. 527; Melick* v. *Voorhees, 9 C. E. Gr. 305.*   If this court has jurisdiction in such a case as this, as it undoubtedly has, it must have the power to assess the damages against the defendants.   *Charitable Corp.* v. *Sutton, ubi supra,* is an instance of the exercise of the power. Of course all the cases in which it has been held that suit may be maintained against directors for such redress as is sought in this suit, are necessarily instances of the exercise of the power.   The demurrers will all be overruled, with costs.