In the matter of the sale of lands devised to St. Michael's Church, Atlantic City, by James Doris, deceased.

[Decided October 20th, 1909.]

1. Wherever a testator devises and bequeaths property for charitable uses, a residuary legatee under the will has no interest in the trust property save as one of the public, and can question the proceedings of the holder of such trust property only by bill and information preferred on behalf of himself and all others similarly interested, in conjunction with the attorney-general, representing the public, or by a class-bill making the attorney-general a defendant.

2. In proceedings for the sale of lands under public statutes, which proceedings are *ex parte* and where no provision is made to let in anybody to defend, no one claiming right, title or interest in the lands may intervene in the proceedings, as such rights as he may have will not be affected by any order or decree that may be made in the premises.

3. Where an act of the legislature provides for the sale of land in *ex parte* proceedings if it shall be made to appear that the interests of the owner thereof or of a particular estate therein will be promoted by such sale, the rights of others claiming interests in the premises will be protected by the limitation that the lands shall not be sold unless it be, to the interest of such owner, as his interest protects the interest of all others claiming rights therein.

4. The act of April 17th, 1905 (*P. L. 1905 p. 287*), amended May 15th, 1907 (*P. L. 1907 p. 462*), authorizing the sale of land granted or devised to religious associations, or to corporations formed or existing for the purpose of education, or to officers or trustees of such corporation, in certain cases, is prospective and not retroactive.

5. An amendatory act, like other legislative enactments, takes effect only from the time of its passage and approval, and has no application to prior transactions, unless an intent to the contrary is expressed in the act or is clearly to be implied from its provisions.

On application for sale of lands devised to a religious corporation, and on application of an individual for leave to answer and contest the application.

*Mr. Peter Backes,* for St. Michael's Church.

*Mr. Clarence L. Cole,* for Catherine Bloomer.

WALKER, V. C.

St. Michael's Church of Atlantic City, a religious corporation organized under the statute of this state, filed a petition showing that James Doris, late of Atlantic City, died September 9th, 1906, leaving a last will and testament which was duly admitted to probate; that by such will he gave to St. Michael's Church a tract of land and a legacy in the following words:

"I give, devise and bequeath unto St. Michael's Church of Atlantic City, New Jersey, the vacant lot of ground on Atlantic avenue, adjoining where I reside (one hundred and ten feet front by one hundred feet deep) for the purpose of building a church and school on said lot, and also direct that the sum of ten thousand dollars shall be given towards the building of said church on said piece of ground."

The petition proceeds to show that the lot so devised is located on Atlantic avenue, the main business thoroughfare of Atlantic City; that along the avenue is a double track overhead

trolley railway, the traffic on which is constant during the summer season and is continuous during the entire twenty-four hours of the day; that the avenue is traversed by all persons who enter or leave the city by automobile or other conveyances; that the traffic along the avenue is very noisy; that almost its entire frontage is used for stores, saloons and hotels; that the lot devised is located adjacent to a licensed saloon and barroom, and that stores and places of business surround it; that owing to the constant traffic and noise along the avenue and its close proximity to stores, saloons and other commercial establishments, the lot is unsuited for the purpose of erecting either a church or school building thereon; that the situation and circumstances of the place are such that the interests of the corporation will be promoted by a sale of the land and by devoting the proceeds thereof in erecting a church edifice for the use of the congregation upon other lands situated in a location more accessible to the immediate homes of the members of the congregation of the church, and one more desirable and suitable for church and school purposes.

The application of the church is based upon "An act authorizing the sale of land granted or devised to religious associations, or to corporations formed or existing for the purpose of education, or to officers or trustees of such corporations, in certain cases," approved April 17th, 1905 (*P. L. 1905 p. 287*), and the amendment thereto, approved May 15th, 1907 (*P. L. 1907 p. 462*).

The act mentioned, as amended, provides that the chancellor may, in a summary manner, by reference to a master, proceed to inquire into the merits of the application; and if it shall satisfactorily appear to the court that the interests of the petitioner will be better promoted by the sale or disposal of the property, the chancellor shall authorize and direct the petitioner to sell or dispose of the lands, or any part thereof, and that the proceeds may be invested in securities in which trustees are authorized by law to invest, or, in the discretion of the trustees, may be set apart and devoted to such use or uses not inconsistent with the nature and objects of the association or corporation as under the existing situation and circumstances in the place

where the lands are located, will better promote the interests of the corporation, the determination of the trustees to be first reported to the chancellor to be approved by him before the proceeds shall be invested or set apart and devoted to such uses.

Upon filing the petition reference was made to a master who has reported that the devised lot is wholly unsuited for the location of a church and school, especially for the church and school of the petitioner, and that the interests of the petitioner will be better promoted by a sale of the lot and investment of the proceeds in the purchase of a lot in a locality free from the objectionable features of the devised lot, and more comfortable, accessible and available to the members of the congregation and school.

The petitioner moves for the confirmation of the master's report, and Catherine Bloomer, a sister of the devisor, who is the residuary legatee named in his will, petitions the court for leave to be let in to answer and contest the petition and offer proof to controvert the material and relevant facts therein set forth. She alleges that because her brother, James Doris, died after the act of 1905 became effective, the church cannot avail itself of the provisions of the act; that if the church is allowed to sell the land or cause the same to be used for any purpose other than a church or school, it will be contrary to the will of James Doris, whose wish it was that a church and school might be erected on the devised lot as a monument to his memory.

It is contended, on behalf of Catherine Bloomer, that she has an interest as residuary legatee under the will of her brother which will permit her to be heard to prevent a diversion of the trust estate. This contention, in my judgment, is untenable. The devise in question and the legacy bequeathed in conjunction with it are for charitable uses, and, therefore, the petitioner, Catherine Bloomer, is interested, if at all, only as one of the public. Therefore, she could only question the proceedings of the trustee, St. Michael's Church, in conjunction with the attorney-general, representing the public, by bill and information. *Larkin* v. *Wikoff,* '75 N. J. Eq. (*5 Buch.*) *462.* Another remedy open to her would be a bill on behalf of herself and all others similarly interested, making the attorney-general a defendant.

See *Lanning* v. *Commissioners of Public Instruction, 63 N. J. Eq. (18 Dick.) 1.*

There is another reason why the petitioner cannot intervene in this cause, and that is, because no provision is made in the act under which these proceedings are taken for letting in anybody to defend. This being so, if Catherine Bloomer has any rights, they will not be affected by any order or decree that may be made in this cause.

In *Cool's Executors* v. *Higgins, 23 N. J. Eq. (8 C. E. Gr.) 308,* it was held:

"The rights or liens of encumbrancers who are not required to have notice, or who do not have notice of the proceedings, are not affected by the sale. The purchaser holds subject to legacies charged on the lands."

In that case Chancellor Zabriskie remarked (at *p. 311*) :

"The act is not framed for avoiding liens or encumbrances. It requires no process. No notice is to be given, except to such persons as are entitled to vested or prospective estates in the premises. No provision is made for notice to encumbrancers or lien claimants. The proceeding can be by petition only, and not by bill, and no subpœna or other process can be issued."

So it is with the act under which we are proceeding in this matter. It merely provides that if it shall be represented to the chancellor that, &c., he may proceed in a summary manner by reference to a master to inquire into the merits of the application, &c. It is not even provided how the proceedings shall be instituted. In this the act is lame. It should, I think, have provided, as is usual in such cases, that the proceeding should be instituted by petition. However, there is no provision for charging any person as defendant, and no provision for the issuance of process, and, therefore, no one can be admitted to defend. In this situation, as already shown, no rights of third parties can be affected. If Mrs. Bloomer has any interest as one of the public it can be protected by a proceeding of the character above pointed out.

But, it would appear, that Mrs. Bloomer is protected in any event by the terms of the act under which these proceedings are

taken, because it is provided in the act that a sale may be had only if it shall appear that the interests of the corporation will be promoted by a sale. Now, if she has interests, those claimed by the corporation are hers, and what would benefit the corporation would benefit her. Said Chancellor Zabriskie, in *Cool's Executors* v. *Higgins, supra* (at *p. 312*) :

"The act only authorizes the sale where it will promote the interest of the owners of the particular and future estates, and when it would be the interest of anyone who might own the lands in fee to sell. This limitation of the power protects the tenant in remainder. If it will injure his interest the sale must not be directed. * * * If this power is wisely exercised it will prevent all injury to the remainderman in cases where it would be the interest of the owner of the fee to sell."

Thus it would appear that the interest of Mrs. Bloomer, as residuary legatee, if any she has, would not be injured by a sale of the devised premises in these proceedings, for they would be ordered to be sold only if it appeared that the interests of the corporation who holds them to charitable uses would be promoted by the sale, and, as already remarked, the corporation's interests are her interests, if any she has.

So far as the claim that the church proposes by selling the land and acquiring another lot and building a church and school thereon, to divert the legacy of $10,000, it is sufficient to say that that question cannot be litigated in this matter. Litigation concerning a legacy surely cannot be imported into a statutory proceeding for the sale of lands. As already pointed out Mrs. Bloomer's remedy, if she be entitled to any, is by bill and information, or by bill on behalf of herself and the class she represents, making the attorney-general a party defendant.

It was also contended on behalf of Catherine Bloomer that the act of April 17th, 1905, does not apply to wills made after its date. This contention, in my judgment, is not tenable; and while Catherine Bloomer is without standing to raise the question, it will, nevertheless, be noticed, as an examination of the statute under which these proceedings were instituted will disclose, that the trustees' case does not fall within its provisions.

34

The language of the statute is "Wherever lands and tenements may have been granted, conveyed or devised to religious associations," &c.

The supreme court, in *State, Alden, prosecutor,* v. *Newark, 40 N. J. Law (11 Vr.) 92,* held:

"The words shall have been, or shall be, in the act passed April 9th, 1875, to heal defects in public notices, are prospective and not retrospective. The intent to make statutes retroactive must clearly appear by express words or by necessary implication."

And Mr. Justice Scudder, speaking for the court, remarked (at *p. 98*) :

" 'Shall have been' is in the future perfect tense, which represents an event as completed in future time, and 'shall be' represents what will take place in future time. If the legislature had intended to make the law retroactive it would have been easy to express it by the use of the words *has been* or *had been,* in the present or past perfect tense, or other equivalent words."

The words "may have been" are also in the future perfect tense, and, therefore, it appears that the statute of 1905, by its very terms, is prospective and not retroactive. But it was materially changed by the amendment of 1907, and the petition preferred by St. Michael's Church is, of necessity, rested upon the amendatory act of May 15th, 1907, for the provisions of the latter superseded the former, so far as the amendment went. The first section of the original act provided that wherever lands and tenements may have been granted, conveyed or devised, &c., upon condition that they shall be held in trust for specific uses and purposes, and appropriating the rents, issues and profits thereof to specific use, but without power to sell and convey, and the specific use to which the rents, issues and profits thereof are dedicated can be enhanced by a sale or disposal of the lands, the chancellor may, in a summary manner, &c. By the amendatory act of 1907 (section 1), the original act is amended so as to provide that wherever lands and tenements may have been granted, conveyed or devised, &c., upon condition that they shall be held in trust for specific uses and purposes, and appropriating the rents, issues and profits thereof to specific use, but without power to sell and convey, *and the existing situation*

*and circumstances in the place where the lands are located are such that the interests of the corporation will be better promoted either by the sale or disposal of the lands, or any part thereof, or by devoting them, or any part thereof, to some use or purpose not inconsistent with the nature and objects of the corporation other than the specific use or trust named in the instrument by which the lands are conveyed or devised,* the chancellor may, in a summary manner, &c. These were the only provisions existing after May 15th, 1907, the date of the approval of the amendment, and were not in force September 9th, 1906, when James Doris died. His devisee, St. Michael's Church, has not sought relief under section 1 of the act of April 17th, 1905, by showing that the specific use to which the rents, issues and profits of the land devised could be enhanced by sale or disposal of the same—it could not do so, as that provision of the act had been repealed at the time these proceedings were instituted by the enactment of the amendment. The statute as it originally stood looked entirely to enhancing the revenues of the lands granted or devised in trust. And this view is borne out by the third section of the original act, which provided alone for the investment of the proceeds of sale and the paying over of the interest arising thereon for the uses specified in the grant or devise. I repeat those provisions are no longer in force. Quite different are the provisions of the amendatory act of May 15th, 1907. The application referred to the court in this matter comes directly within section 1 of the amendatory act, and shows that the *existing situation and circumstances in the place where the lands are located* are such that the interests of the corporation will be better promoted by a sale thereof, and section 3, as amended, provides that the proceeds of sale may be either loaned and invested, or *be set apart and devoted to such use or uses not inconsistent with the nature and objects of the corporation* as under the existing situation and circumstances will better promote the interests of the corporation. Now it is quite obvious that if the land devised can be sold the proceeds of the sale may be invested in other lands in the same locality better suited to the uses and trusts in that behalf contained in the will of the devisor, and upon which trusts alone they may be used. Such disposition of the pro-

ceeds, it would seem, could not have been made if a sale could have been had under the act as it originally stood, but can be made if a sale under the amendatory act may be authorized. The devise was to use the land itself and not the issues arising therefrom.

But the language of the amendatory act, namely, wherever lands and tenements may have been granted, conveyed or devised to religious associations, &c., like the phraseology of the original act, is prospective and not retroactive, and, therefore, the will of the late James Doris does not fall within the provisions of the amendment, because he died in 1906, and the amendment did not go into effect until its approval on May 15th, 1907.

"An amendatory act, like other legislative enactments, takes effect only from the time of its passage and has no application to prior transaction unless an intent to the contrary is expressed in the act or clearly implied from its provisions." *26 Am. & Eng. Encycl. L. (2d ed.) 712 § 7.*

The supreme court of this state has held that the supplement to an act of the legislature goes into operation on the 4th of July next after its passage, unless otherwise specifically provided. *State, Vreeland, prosecutor,* v. *Town of Bergen, 34 N. J. Law (5 Vr.) 438.* In line with this case is that of *McLaughlin* v. *Newark, 57 N. J. Law (28 Vr.) 298,* in which the supreme court held (at *p. 301*) that an amendment to an existing statute, which, under our constitution, recites the amended section at length in the amending act, does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. That, of course, means that the original act stands from the time of its passage to the time of the amendment, after which time it still stands so far as not amended, and is changed from that time forth so far only as amended. See, also, *Schwarzwaelder* v. *German Mut. Fire Ins. Co., 59 N. J. Eq. (14 Dick.) 589* (at *p. 593*). The rule has been stated as follows:

"The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act. The change takes effect prospectively according to the general rule." *1 Lewis' Suth. Stat. Con. (2d ed.) 443 § 237.*

Therefore, although Mrs. Bloomer has no standing to intervene in these proceedings, and although the master's report is abundantly supported by the depositions annexed to it, no order can be made for a sale of the devised lot and the investment of the proceeds and the purchase of another lot in Atlantic City in a locality free from the objectionable features of the one sought to be sold, because the amendatory act under which the applica-tion is made was not enacted until after the will of the decedent became operative, and as the terms of the amendment are pros-pective and not retroactive, a case is not made falling within the act now in force. Therefore, both the original application and the petition for leave to intervene must be dismissed.