JOHN SHAFRAN et al., complainants-appellants,

*v.*

ST. NICHOLAS RUTHENIAN GREEK CATHOLIC SICK AND DEATH BENEFIT SOCIETY OF PASSAIC, NEW JERSEY, et al., defendants-respondents.

[Decided September 27th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stein, who filed the following opinion:

"Complainants or some of them on or about September 24th, 1915, associated themselves into a corporation under the provisions of an act of the legislature entitled "An act to incorporate associations not for pecuniary profit," approved April 21st, 1898, and the several supplements thereto and acts amendatory thereof, by signing and filing a certificate of incorporation of a society to be known as St. Nicholas Ruthenian Greek Catholic Sick and Death Benefit Society of Passaic, New Jersey. The society was formed according to the certificate 'for the mutual benefit and protection of all its members and to render aid and support to them and their wives and families in sickness and distress and in the event of sickness, disability or death, to render aid and assistance from funds contributed by the members, or received from other sources, and in general to help and assist the members in every way possible according to law.' Six trustees to serve for the first year are named therein. Some of the original trustees so named are parties to the bill of complaint, and all of the complainants were admitted as members and paid

their dues as required by the constitution and by-laws. The constitution and by-laws provide as a qualification for membership, the profession of the Catholic faith according to the Greek rite, and that a member who abandons his denomination, forfeits his right to vote at the election of officers. In the year 1928 it is charged, certain members of the society seceded from the St. Nicholas Ruthenian Greek Catholic Church of Passaic, New Jersey, and joined a schismatic church, and although the constitution and by-laws provide for the holding of the annual meeting for the election of officers 'every year during the last days of December,' such elections for fourteen years were always held on the 31st day of December in each year, and that contrary to this custom, at a meeting held on December 29th, 1928, an election of officers for the year 1929 was held, which meeting and election, complainants charge, was illegal. Complainants or a majority of them being present refused to participate in the election, stating their objection to be that the customary meeting date was December 31st, and thereafter, held another meeting on March 2d, 1929, and elected a new set of officers.

"The defendants have custody of the funds of the association amounting to approximately $16,000, as well as the books and papers of the society, and refuse to surrender the same to the complainants.

"The prayer of the bill is (1) for an accounting of the moneys belonging to the society in the possession and under the control of the defendants; (2) that defendants be restrained from withdrawing funds and holding corporate meetings; (3) that a receiver be appointed to take possession of the property of the society, and that it be dissolved, and the assets equitably distributed among the persons entitled thereto.

"In support of the relief which complainants seek they insist that the society is a religious society, and that a portion of a religious society may not disfranchise the rest, nor can even a majority arbitrarily withdraw from a minority and appropriate to themselves the corporate name and property of the organization, citing in support of their contention

*Grupe* v. *Rudisill, 101 N. J. Eq. 145; True Reformed Dutch Church of Paramus* v. *Iserman, 64 N. J. Law 506,* and others.

"This is not a religious society and the cases cited have no application. It was incorporated under an act to incorporate associations not for pecuniary profit, which act provides that the certificate shall state 'the purpose for which it is formed,' and that the 'certificate may at the option of the incorporators contain provisions prescribing the qualification of officers and members whereby they may be required to be members in good standing * * *, and any limitation or regulation of the powers of the corporation and of its officers and members, not inconsistent with the law or this act, which the incorporators may choose to insert.' The certificate of incorporation is silent as to the qualification of officers and members whereby they may be required to be members in good standing of the society. The objects expressed in the certificate of incorporation are purely those of a sick and death benefit society. Section 9 of the act provides that it shall be lawful for associations incorporated under the act, 'where their certificate of incorporation so specified, to provide for the relief of disabled or destitute members or their families and to maintain a fund for that purpose, or to contract with their members to pay death benefits according to the rules or by-laws adopted by such associations.' Section 11 of the act provides for the dissolution of such a corporation and sets forth the manner and method to be adopted.

"If the object of this society when formed was religious it was not expressed in the certificate. Indeed, we have statutes in this state for the incorporation of religious, educational, benevolent or charitable corporations, not part of a church organization and for denominational religious societies.

"Again, the constitution and by-laws of the society under article 2, sections 3 and 4, under the title 'purpose and objects,' follows the certificate of incorporation in that the sections provide for sick and death benefits only. True, section 68 of article 8, under caption 'Joining the Association' provides that 'only a Greek Catholic, and not a Schismatic, may become a member of the association,' and section 69

reads that 'a member who will abandon his denomination or his nationality, shall not be eligible to office, and shall forfeit his right to vote at election of the officers,' but the testimony discloses that this provision was not adhered to in that persons were admitted to membership not of the Greek Catholic faith, while members, who, when they joined, were Greek Catholics and subsequently renounced their faith, were retained as members. The fact is that such members are in the majority and it is this situation which brought about the charges and allegations in the bill of complaint above set forth.

"The society since its incorporation has not functioned according to law. The constitution provides for the management of the affairs of the corporation by the 'Supreme Assembly,' consisting of the 'president, vice-president, recording secretary, financial secretary, treasurer, assistant secretary and six advisers,' and provides for their annual election with 'power to execute and carry into effect the objects of the association,' all of which is contrary to law. The act under which the society was incorporated requires the naming in the certificate of incorporation of trustees not less than three in number selected for the first year of its existence, and in section 4 of the act, 'the business of the association shall be conducted by the trustees, subject to the by-laws which shall be passed by the members; the trustees shall be elected by the members and shall hold office for one year, or such term as the by-laws provide, and until their successors shall be elected; * * * ; there shall be a president, secretary and treasurer, to be chosen by the trustees, unless the by-laws provide for the election of any of them by the members.'

"The election therefore of officers and six advisers to constitute the 'supreme assembly' for the management of the society was illegal, the provisions of the constitution and by-laws in that respect being contrary to law.

"The splendid objects of this society, the caring for the sick and the widows and orphans of the dead may not thus be frustrated. The complainant members who have over the years contributed to the fund of $16,000, and whose mem-

bership presently is denied by themselves or others, must not be deprived of benefit in the fund. The property of a society organized to provide sick and death benefits is impressed with a trust for the uses of the society, but the trust is for all the members, and none will be deprived of their interest therein. Equity generally, as far as it can, redresses the grievances of the members of the society who complain to it of injustice affecting their pecuniary interests therein. *Van Houten* v. *Pine, 36 N. J. Eq. 133; Pirics, et al.* v. *First Russian, &c., Society, 83 N. J. Eq. 29; 89 Atl. Rep. 1036.*

"An election of trustees according to law, under the direction of a master of this court will be ordered, the date for the holding of which will be fixed hereafter. Complainants will be given an opportunity and the right to participate in the election and be fully restored to membership upon payment to the society of dues in arrears, if any, which accrued since their separation from the majority, in whose possession presently the fund and property of the society remains.

"Decree will be made in conformity with these conclusions."

*Messrs. Wolber, Gilhooly & Yauch (Mr. John H. Yauch, Jr.,* of counsel), for the appellants.

*Mr. John O. Benson,* for the respondents.

PER CURIAM.

The order appealed from will be affirmed, for the reasons expressed in the opinion filed by Vice-Chancellor Stein in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.