7 N.J. Super. 558 (1950)
72 A.2d 371
DAPHNE ROBERT LEEDS ET AL., PLAINTIFFS,
v.
EDNA M. HARRISON ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 23, 1950.
*562 Messrs. Moore, Butler & McGee (by Mr. James N. Butler), for plaintiffs.
Messrs. Weidner Titzck and Stephen L. Valore, for defendants.
HANEMAN, J.S.C.
This is a motion addressed to the complaint in the above entitled matter. The complaint alleges that seven of the plaintiffs are members of the defendant Young Women's Christian Association of Atlantic City, New Jersey; that Ezra C. Bell and Augusta I. Evans had at various times contributed services and money to the defendant Young Women's Christian Association of Atlantic City, New Jersey; that the other twelve named plaintiffs, being duly qualified for admission to the defendant Young Women's *563 Christian Association of Atlantic City, New Jersey, and having duly applied for membership, were refused admission as active members.
For the purpose of convenience, the first named plaintiffs will be referred to as "members;" the second named plaintiffs will be referred to as "contributors;" the third named plaintiffs will be referred to as "non-members" and the defendant Young Women's Christian Association of Atlantic City, New Jersey, will be referred to as "Y.W.C.A."
The allegations of the complaint, which consists of seven counts, and the grounds for this motion, will be paraphrased in brief.
The allegata of the complaint set forth that (1) the provisions of the constitution and by-laws heretofore adopted by the individually named defendants, or some of them, are illegal, in that (a) they provide for a board of directors, consisting of fifteen or more members; (b) that there have been elected and appointed in addition to said board of directors a number of trustees; (c) that the individually named defendants have adopted objects and purposes contrary to the purposes set forth in the certificate of incorporation; (2) the individually named defendants have conducted the affairs of the defendant corporation in contravention of the certificate of incorporation, the constitution and by-laws of the Y.W.C.A., and the statutes of the State of New Jersey; (3) that the individual defendants have failed to carry out the terms and provisions of the certificate of incorporation, the constitution and by-laws of the Y.W.C.A., in that, as a qualification for membership applicants are required (a) to subscribe to a "statement of faith;" (b) be members of certain specified Protestant Evangelical churches; (c) to appear in person before the membership committee on certain days and between certain hours; (d) the individual defendants have arbitrarily discriminated between duly qualified applicants; (4) the individual defendants have failed to comply with said by-laws, which require them to "seek to increase and hold membership;" (5) the contributors contributed services *564 and donated funds with the understanding and agreement that the Y.W.C.A. would be conducted in accordance with the provisions of the certificate of incorporation and the statute under which said corporation was incorporated, but that the individual defendants have failed and neglected to carry on said corporation as aforesaid; (6) the individual defendants have neglected and refused to furnish a financial statement of the Y.W.C.A.; (7) the individual defendants are operating upon the premises owned by the defendant corporation a commercial restaurant and hotel for profit, in violation of the law applicable to and the purposes of the Y.W.C.A.; (8) the individual defendant officers and directors have for many years held annual elections which have been conducted contrary to the laws of the State of New Jersey and the by-laws of the corporation.
In light of the foregoing, plaintiffs demand the following relief: (1) that the individually named defendants be required to conduct the affairs and property of the defendant Y.W.C.A. in accordance with the provisions of the certificate of incorporation and the statute under which it was incorporated; (2) that the defendants be restrained from enforcing or hereafter promulgating rules, regulations and requirements in respect to membership which are contrary to the certificate of incorporation of the defendant corporation and the act under which the Y.W.C.A. is incorporated, and the laws of New Jersey; (3) that the defendants be restrained from requiring present members or applicants to be members of Protestant Evangelical churches; (4) that the defendants be restrained from requiring applicants for membership to subscribe to the "statement of faith" above referred to; (5) that the defendants be restrained from using or requiring membership in defendants' private list of Protestant Evangelical churches; (6) that the defendants be ordered to admit to membership plaintiffs who have applied for membership and all other duly qualified persons; (7) that the defendants be required to hold an election for directors and officers in accordance with the law and under the supervision of this *565 court; (8) that the defendant officers and directors be ordered to account for their operation of the defendant corporation.
The defendants now move to dismiss all counts for failure to state a claim, and in the alternative, if such motion should be denied as to some of the specific counts, then for a summary judgment on said counts for reasons hereafter stated.
The bases for the motion addressed to the complaint in toto are as follows, that (1) the twelve non-members of the defendant Y.W.C.A. have no interest upon which they can predicate an action, and (2) the seven members of the defendant Y.W.C.A. have not exhausted their remedies as members of the defendant corporation within the corporation itself, and that there is no property right here involved. The bases for the motion addressed to the separate counts are as follows, (1) the first count should be dismissed because it does not allege any breach of law and because it appears to be predicated on implications of fraud and breach of trust, without any allegations of any facts which might constitute such wrongs; (2) the second and third counts of the complaint should be dismissed on the ground that the defendant corporation possesses the sole right to admit or refuse to admit to membership individuals applying therefor; (3) the fourth count of the complaint should be dismissed upon the ground that if it is concerned with the administration of a charitable trust, such action should be brought by the Attorney General of the State of New Jersey and not by those who allege that they have contributed to the fund constituting such charitable trust, and if a charitable trust is not involved, the complaint fails to state a claim upon which relief can be granted; (4) that the sixth, seventh and eighth counts should be dismissed because they fail to state a cause of action upon which relief can be granted; (5) that the third, fifth and sixth counts should be dismissed because they show palpably that there is no genuine issue as to any material fact challenged, as provided in Rule 3:56-3.
The pertinent facts as disclosed by the complaint and affidavits are as follows: The defendant Y.W.C.A. was incorporated *566 in 1915 under an act entitled "An Act to Incorporate Associations not for Pecuniary Profit," P.L. 1898, p. 422, now known as R.S. 15:1-1 et seq. The certificate of incorporation itself is very brief, but provides, in part, as follows:
"(2) The purpose for which said corporation is formed is the improvement of the spiritual, intellectual, social and physical condition of young women."
"(4) The number of trustees shall be five."
In addition, at some time not made clear by the complaint nor the affidavits, a "constitution" and by-laws were adopted for "Young Women's Christian Association of Atlantic City, N.J." The constitution contained the following provisions:
"The purpose of the Young Women's Christian Association shall be to associate young women in personal loyalty to Jesus Christ as Savior and Lord; to promote growth in Christian character and service through physical, social, mental and spiritual training and to become a social force for the extension of the Kingdom of God."
"Section 2. Object. The Object of this Association shall be the spiritual, intellectual, social and physical development of Young Women."
"Section 1. (a) General Members. Any woman properly introduced or giving satisfactory reference as to character, may become a member of the Association.
"(b) In order to conserve the purpose of the Association members shall be classified at the time that payment is made of the Annual membership fee as (1) Active Members, comprising those who subscribe to and will support the purpose and who are members of Protestant Evangelical Churches; these members shall be voting members known as electors."
"Section 1. Duties. The management of this Association shall be vested in a Board of not less than fifteen nor more than twenty-one Directors chosen by ballot from the active members, which shall organize departments and branches, and shall have supervision of all work of the Association, and shall make all contracts and leases."
"Section 2. Elections. One third of the Board of Directors shall be elected by ballot, cast by the active members of the Association, at each annual meeting to serve for a period of three years. The Board shall have the power to fill any vacancy occurring in the interim of annual meetings. Not more than one-third of the Board of Directors shall be members of any one Church denomination."
"There shall be a Board of not less than five Trustees, either men or women, whose terms of office shall be three years. The President shall be ex-officio a member of this Board."
*567 "The membership committee shall have charge of all matters pertaining to membership and it shall seek to increase and hold the membership and develop it into an efficient working force in harmony with the purpose of the Association. It shall keep an accurate list of all members."
The statement of faith referred to in the bill of complaint refers to various Biblical quotations to which applicants are apparently obliged to subscribe without question or reservation.
P.L. 1898, p. 423 (1 C.S., p. 126), provided, in 1915, as follows:
"2. Certificate may prescribe qualifications of officers and members, and regulations of business, etc.  The certificate may at the option of the incorporators contain provisions prescribing the qualification of officers and members whereby they may be required to be members in good standing of any fraternal, religious or beneficiary order or society or of any fire or police force or have other prescribed qualifications, which provisions shall be binding on the members and officers, and the certificate may contain any other provision for the regulation of the business and conduct of the affairs of the association, and any limitation or regulation of the powers of the corporation and of its officers and members, not inconsistent with law or this act, which the incorporators may choose to insert. (P.L. 1898, p. 423.)"
Much of defendants' argument has relied upon cases involving voluntary associations and not corporations.
The Y.W.C.A. is not a voluntary or unincorporated association, but is a corporation existing by virtue of the statute providing for corporations not for pecuniary profit. R.S. 15:1 et seq.
It becomes necessary to ascertain whether the corporate defendant Y.W.C.A. is a charitable corporation in order that the proper law may be applied.
In Noice v. Schnell, 101 N.J. Eq. 252, 137 A. 582, the court said at page 259, in defining a charity, as follows:
"There have been many definitions of a public charity given in the opinions in English and United States cases on this subject. They are in substantial accord because the common law of England and the law in this country is the same. From the wealth of decisions *568 on this subject there are some outstanding cases which contain definitions of a public charity to which reference is frequently made. The definition of a public charity given by Horace Binney in his argument before the United States supreme court in the Girard Will Case and adopted by the court (Vidal v. Girard, 43 U.S. 127, 11 L.Ed. 205), is one of the most striking. It is as follows:
"`Whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense  given from these motives and to these ends  free from the strain or taint of every consideration that is personal, private or selfish.'
"In the able opinion in this court of the late Judge Green, in MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652, he approves the definition given by the eminent Massachusetts jurist, Justice Horace Gray, in Jackson v. Phillips, et al., 96 Mass. 539, which is as follows:
"`"A charity, in its legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint; by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described as to show that it is charitable in its nature."'
"Of the text-writers, Perry gives a comprehensive definition of a charitable trust in these words:
"`Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted, and all gifts for the public convenience, benefit, utility or ornament, in whatever manner the donors desire to have them applied.' 2 Perry Trusts (5th ed.) 314.
"Of the shorter definitions Lord Camden's definition in Jones v. Williams, Amb. 651, is striking. He defines a charitable trust as, `A gift to the general public use which extends to the poor as well as to the rich.'
"Another condensed definition is that of Mr. Justice Swain in Ould v. Washington Hospital, 95 U.S. 311, which is given in these words: `A charitable use where neither law nor public policy forbids may be applied to almost anything that tends to promote the well-doing and well-being of social man.'"
See also Vol. 3 Scott on Trusts, p. 1915; Restatement of the Law  Trusts, pp. 1095, 1140 et seq.; Y.W.C.A. of Camden v. Murrelle, 141 N.J. Eq. 229, 56 A.2d 738; MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652, 61 A. 1027; 10 Am. Jur. 587; Young Women's Christian Ass'n. *569 v. Pelham, 153 A. 397, 9 N.J. Misc. 196; Paterson Rescue Mission v. High, Rec., 64 N.J.L. 116, 44 A. 974.
A charitable corporation is one organized not for private gain or profit, but for charitable purposes  for the administration of charitable trusts. See also 1 Fletcher on Corporations, p. 189; Vol. 3 Scott on Trusts, p. 1918.
As a result of considering both the statute under which the defendant corporation was organized, and the purpose as set forth in the certificate of incorporation, the defendant corporation is here held to be a charitable corporation.
We have here, therefore, an action by three different classes of plaintiffs, (1) members, (2) non-members, (3) contributors or donors. The rule applicable to the first class is entirely different and distinct from that applicable to the latter two classes.
Keeping in mind that the Y.W.C.A., the corporate defendant, is a charitable corporation, it becomes necessary to determine the effect of the relationship of each of the three above enumerated classes of plaintiffs to the Y.W.C.A. in order to reach a conclusion on the present motion.
Counsel for the defendants argue that a voluntary association may require such qualifications for membership and such formalities of election as it may choose and that it may limit or restrict its membership to the original organizers or any other limited number, and cites numerous cases as authority.
It must be admitted that the proposition advanced by defendants is a correct exposition of the law. It must also be conceded that the court has no jurisdiction to compel the admission of a person to membership in a voluntary organization who has not been elected according to its rules and by-laws. The court does not exercise visitorial powers over a voluntary association except to prevent the violation of some law of the State or to protect some right already acquired by a plaintiff. Mayer v. Journeymen Stonecutters' Association, 47 N.J. Eq. 519, 20 A. 492; Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11, 176 A. 692; Ace Bus Transp. Co. v. South Hudson, etc., Ass'n., 118 N.J. Eq. 31, *570 177 A. 360; affirmed, 119 N.J. Eq. 37, 180 A. 835; Carroll v. Local No. 269, etc., Electrical Workers, 133 N.J. Eq. 144, 31 A.2d 223.
The constitution and by-laws of a voluntary association became a part of the contract entered into by a member when he joined such association. Walsche v. Sherlock, 110 N.J. Eq. 223, 159 A. 661; Harris v. Geier, 112 N.J. Eq. 99, 164 A. 50; Cameron v. International Alliance, &c., U.S. & Canada, 119 N.J. Eq. 577, 183 A. 157; Gaestel v. Brotherhood of Painters, &c., 120 N.J. Eq. 358, 185 A. 36; Height v. Democratic Women's Luncheon, &c., Inc., 131 N.J. Eq. 450, 25 A.2d 899.
Defendants conclude that the plaintiffs therefore have no right of action in any event, insofar as refusal to membership is concerned.
Insofar as the member plaintiffs are concerned, their rights arise by virtue of the certificate of incorporation, constitution and by-laws. Unlike most corporations for profit, a corporation not for pecuniary profit normally has no stockholders, but in place thereof it has members. The same rights and liabilities exist between the trustees of a non-profit corporation and the members as exist between the directors and stockholders of a corporation for profit. The suit here brought may be likened to a derivative or representative suit brought in connection with a stock corporation. The law applicable to such suits is, so far as is here pertinent, applicable to this suit.
The certificate of incorporation, constitution and by-laws of a corporation constitute a contract between the corporation and the members as well as between the members inter sese, and the trustees or directors bear a fiduciary relationship to the members which requires them to comply with said certificate and by-laws. Mayer v. Oxidation Products Co., Inc., 110 N.J. Eq. 141, 159 A. 377; Moore v. Conover, 123 N.J. Eq. 61, 195 A. 833; Grupe v. Rudisill, 101 N.J. Eq. 145, 136 A. 911; Loewenthal v. Rubber Reclaiming Co., 52 N.J. Eq. 440, 28 A. 454; Einstein v. Rarilan Woolen *571 Mills, 74 N.J. Eq. 624, 70 A. 295; Costello v. Thomas Cusack Co., 96 N.J. Eq. 83, 124 A. 615; Vol. 12 Fletcher's Cyclopedia Corporations, p. 978.
Although the statute under which the defendant corporation was incorporated makes no provision for the adoption of a "constitution," the alleged constitution and by-laws here adopted must be read together and be considered as one in order to resolve the questions propounded. In Grupe v. Rudisill, 101 N.J. Eq. 145, 136 A. 911, and in Shafran v. St. Nicholas, &c., N.J., 117 N.J. Eq. 54, 175 A. 139, the court apparently followed this reasoning.
The fallacy with the advanced theory lies in the fact that the defendant Y.W.C.A. is a charitable corporation and not a voluntary unincorporated association. It is true that such corporation may limit its membership by a provision in its certificate of incorporation or a by-law not inconsistent with the provisions of its certificate of incorporation nor contrary to law. The member plaintiffs here urge, however, that the provisions restricting membership are both in conflict with the provisions of the certificate of incorporation and by-laws and contrary to law. Eliminating the nonmember plaintiffs, this is not an action by a person not elected according to the rules and by-laws of a voluntary association seeking to force such an association to admit him as a member. It is an action by some members of an incorporated charitable organization, alleging, among other grievances, that the individual defendants have violated a contract and breached their fiduciary duty by imposing restrictions upon applicant candidates, contrary to the provisions of the certificate of incorporation and the law. In this situation of the pleadings, the members are entitled to their day in court. The suit, in effect, seeks to force the individual defendants, as trustees, directors and officers, to comply with the law and prevent further alleged violations in the execution of their duties, not only insofar as admission of members is concerned, but in a number of other heretofore enumerated particulars.
The effect of the foregoing argument of defendants is as well that this court has no visitorial power in the premises.
*572 This court exercises some visitorial powers over corporations generally and especially over charitable corporations. In Mayer v. Oxidation Products Co., Inc., 110 N.J. Eq. 141, 159 A. 377, the court said at pages 143, 144 and 145:
"The concept of visitorial (or visitatorial) power was derived from the canon law and was extensively applied in the eighteenth century as a part of the common law, to charitable corporations, and especially to colleges. As so applied, visitorial power may be defined as the exclusive right of the founder of a corporation, his heirs or nominees, to make by-laws for the corporation and to adjudge disputes arising thereunder. The original endower of the corporation was considered to be the founder. If the king endowed, he was the founder and had the right of visitation, which he exercised through the chancellor as his visitor. But this authority of the chancellor was not a part of the jurisdiction which he exercised in the court of chancery; it was one of his ministerial powers. 3 Bl. Com. 47; Attorney-General v. Earl of Clarendon, 17 Ves. Jr. 491; 34 Eng. Rep. 190. The visitor was not the proper judge in all disputes among members of the corporation or relating to its internal affairs, but only in cases arising under its by-laws; controversies under the general law of the land were adjudicated in the public courts. Thus in King v. St. John's College, 4 Mod. 233; 87 Eng. Rep. 366, mandamus issued out of the king's bench to compel the master of the college to take the oath of the fellows. In Attorney-General v. Corporation of Bedford, 2 Ves. 505; 28 Eng. Rep. 323, Lord Hardwicke made the master of the school account for school funds, although he declined to remove him, since removal came within the power of the visitor. In the early days when a charity was created, the beneficiaries usually composed the corporation, for example the master and fellows of a college; but during the last two centuries the custom has arisen of incorporating trustees, who do not personally share in the revenue. In such case, by implication, the trustees are the visitors. Now, I much doubt if any of this doctrine has ever been the law in our country. The private endower of an incorporated charity has no visitorial power; the state seems to have the same power in respect to corporations endowed privately and those endowed by the state, except as its power in respect to the former may be restricted by the doctrine of the Dartmouth College Case. The authority of trustees is determined by the charter of the corporation or by the law of trusts and not by any rule concerning visitors.
"Blackstone says that corporations other than charitable, namely, municipalities, trading companies, etc., were subject to the visitation of the king in the court of king's bench according to the rules of the common law. And in our country it has been laid down that the legislature is visitor of all corporations. I confess that this has, for me, little meaning; I have found no decision of which I could say that it was a case of the exercise of visitorial power over a civil corporation. Of course, the king's bench and, in New Jersey, *573 the supreme court, by the prerogative writs compel the performance of corporate duties, decide disputes over offices, and review ordinances. But these writs do not depend on a visitation; they issue pursuant to the court's jurisdiction over franchises, subordinate tribunals and public officers. Similarly, the legislature enacts statutes concerning corporations, but of what act can it be said that the authority of the legislature to pass it depended on visitorial power? Now I realize that the power of the legislature to enact a given statute may fall under more than one heading. While all our statutes can stand, I believe, without recourse to visitorial power, still it may be that some of them have added authority from that source. Possibly the sections of the Corporation act relating to receiverships of domestic corporations. (Comp. Stat. p. 1640) find sanction in visitorial power. If so, then the jurisdiction of chancery bestowed by those sections may depend on that right of visitation which inheres in the founder of a corporation. But outside such, or similar statutory authority, the court of chancery has no visitorial power over any corporation. Such power, (if any there be) is in the supreme court.
"Stockholders' suits in equity have been so common of late years that the court ordinarily finds no need to state the basis of jurisdiction. But an examination of the cases, especially the earlier ones, discloses that the jurisdiction of the court of chancery in the usual suit between a stockholder and his corporation, is not dependent upon any visitorial power, but is a part of the general equity jurisdiction of the court. In one group of decisions, relief is founded on the premise that a corporate charter is a contract between the corporation and its stockholders, and between the stockholders severally, whereby it is agreed that the corporate property will be employed for a specified purpose. A court of equity, at the suit of a stockholder, one of the contracting parties, will restrain a violation of the contract. Cases of this character are Kean v. Johnson, 9 N.J. Eq. 401; Zabriskie v. Hackensack and New York Railroad Co., 18 N.J. Eq. 178; Black v. Delaware and Raritan Canal Co., 24 N.J. Eq. 455; McGregor v. Home Insurance Co., 33 N.J. Eq. 181; Elkins v. Camden and Atlantic Railroad, 36 N.J. Eq. 5; Pronick v. Spirits Distributing Co., 58 N.J. Eq. 97; Colgate v. United States Leather Co., 73 N.J. Eq. 72, reversed, 75 N.J. Eq. 229. Such suits fall within the court's jurisdiction to enforce a contract where the legal remedy for a breach is inadequate. Other decisions put emphasis on trusts and frauds. The directors are trustees for the corporation and for the stockholders, a stockholder, as a cestui que trust, may appeal to the court to prevent a breach of trust by his trustees, the directors, or to make them account for past derelictions. Gardner v. Butler, 30 N.J. Eq. 702; Ackerman v. Halsey, 37 N.J. Eq. 356; Freeman v. Sea View Hotel Co., 57 N.J. Eq. 68; Way v. American Grease Co., 60 N.J. Eq. 263."
See also MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652, 61 A. 1027.
*574 This court has the jurisdiction to determine the present controversy either by reason of its right of visitation of a charity or the general equity jurisdiction.
Conceding that the members must exhaust the remedies granted to them under the constitution and by-laws, as argued by defendants  Sibley v. Carteret Club, etc., 40 N.J.L. 295; Venezia v. Italian Mutual Benevolent Society, 74 N.J.L. 433, 65 A. 898; Central Bus Operators v. Central Avenue Bus, etc., 127 N.J. Eq. 144, 11 A.2d 732; D'Aloia v. Unione Fratellanza, 84 N.J.L. 683, 87 A. 472; Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11, 176 A. 692; Walsche v. Sherlock, 110 N.J. Eq. 223, 159 A. 661; Dragwa v. Federal Labor Union, 136 N.J. Eq. 172, 41 A.2d 32  they must fail on this motion, as there is no method provided for redress or appeal within the framewark of the corporation itself to litigate the actions by which the member plaintiffs are allegedly aggrieved.
The somewhat lengthy recital in this opinion of the allegata of the complaint, the provisions of the applicable statute, certificate of incorporation, constitution and by-laws, demonstrate that the member plaintiffs have a legal right to question in this court the conduct of the business of the corporation by defendants in the particulars alleged, to ascertain whether there resulted a violation of their contractural rights or the fiduciary relationship.
Under the circumstances, defendants' motions, insofar as the member plaintiffs are concerned, will be denied.
The contributors seek to force the defendants to account as trustees for a breach of trust in the expenditures of funds of a charitable trust.
As a general rule, the contributors to a fund creating a trust for mere charitable purposes cannot call the trustees of that fund to an account for a misapplication of the fund or any other breach of the trust. There must be something peculiar in the transaction, beyond the mere fact of contribution, to give a contributor to a charitable fund a foothold in court to enable him to question the disposition of the fund.
*575 A person who comes into a court of equity for such a purpose must have some interest in the trust. In general, he must be a trustee, or cestui que trust, or have some reversionary interest in the trust fund. Ludlam v. Higbee, 11 N.J. Eq. 342; Restatement of the Law  Trusts, p. 1183.
Although at first blush the opinion in Mills v. Davison, 54 N.J. Eq. 659, 35 A. 1072, may seem to be in conflict, it is to be noted that the court there held that the donors or contributors were as well cestui que trust. The generalized statement contained in that case may be characterized as dicta.
Generally, a member of the public has no standing to question the administration of a charitable trust. In the absence of some special interest, a private citizen cannot file a suit where the sole object is the vindication of a public right in a charity. Suits for the enforcement of a public trust or charity should be commenced by such private citizen as a relator in an information filed by the Attorney-General. The presence of the Attorney-General is indispensable. In re St. Michael's Church, 76 N.J. Eq. 524, 74 A. 491; Larkin v. Wikoff, 75 N.J. Eq. 462, 79 A. 365; affirmed, 77 N.J. Eq. 589, 78 A. 1134; MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652, 61 A. 1027; Trustees of Princeton University v. Wilson, 78 N.J. Eq. 1, 78 A. 393; Passaic National Bank, &c., Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603, 45 A. 2d 814; Vol. 3 Scott on Trusts, p. 2052; Restatement of the Law  Trusts, p. 1183; First Camden, &c., Trust Co. v. Hiram Lodge, 134 N.J. Eq. 303, 35 A.2d 490; affirmed, 135 N.J. Eq. 505, 39 A.2d 371; Cuthbert v. McNeill, 103 N.J. Eq. 184, 142 A. 667; affirmed, 104 N.J. Eq. 495, 146 A. 881.
It follows that both the contributors and non-members have no standing in this court in their individual capacities. I will, however, not now dismiss the suit as far as they are concerned, but will afford them reasonable opportunity to amend, if they so desire, in conformity with these conclusions. If advantage is not taken to so amend, the motion of defendants relating to the contributors and non-members will be granted.