CENTRAL BUS OPERATORS, INC., a corporation of New Jersey, complainant,

*v.*

CENTRAL AVENUE BUS OWNERS ASSOCIATION, WENDT BUS COMPANY, INC., EDWARD WENDT and FRANK SCIOU-TELLA, defendants.

[Decided March 14th, 1940.]

*Messrs. Pesin & Pesin,* for the complainant.

*Mr. Theodore C. Baer,* for the defendant Central Avenue Bus Owners Association.

*Messrs. Armstrong & Mullen,* for the defendants Wendt Bus Company, Inc., and Edward Wendt.

*Mr. John R. Kelly,* for the defendant Frank Scicutella.

EGAN, V. C.

The complainant is a corporation whose membership is composed of drivers of buses who operate over a course known as the Central avenue line in Jersey City, New Jersey. On this line there are twenty-six buses owned by individuals and corporations. The owners of the buses are members of the defendant organization, Central Avenue Bus Owners Association.

Edward Wendt, the defendant, owned, and held a franchise on, one of the buses for approximately ten years. He operated the bus during that time. In February, 1939, he formed a corporation which was named the Wendt Bus Company, Inc. He transferred his bus and franchise to that corporation. The transfer was, on March 30th, 1939, approved by the Board of Public Utility Commissioners of the State of New Jersey (*Exhibits D-2* and *D-4*).

The complainant organization in March, 1938, and April, 1939, entered into contracts (*Exhibits C-4* and *C-5,* respectively) with the defendant, Central Avenue Bus Owners Association; both contracts are practically alike. The March, 1938, contract, marked as *Exhibit C-4,* expired in March, 1939. The April, 1939, contract, marked as *Exhibit C-5,* is still in force. The first paragraph of the contracts provides:

"1. Members of the Central Bus Operators Incorporated with paid up books *to be* employed or those willing to become members at the next regular meeting of the association." (Italics mine.)

Scicutella, the defendant, for ten years prior to the incorporation of the Wendt Bus Company, Inc., operated the Wendt bus. He was a member of the complainant organiza-

tion. His dues had been fully paid. In February, 1939, when the Wendt Bus Company, Inc., was formed, he agreed to purchase four shares of its stock. The complainant takes the position that from the time he agreed to purchase that stock he violated article 14 of its constitution which reads as follows:

"No person while a member of this association may belong to or participate in any other labor organization in the State of New Jersey of a similar purpose or nature served by this organization or any other organization in conflict with the interests of this association."

It declared his action called for his expulsion from its organization; consequently, it expelled him. The expulsion divested him of all organization rights and benefits, among which was the right to be employed as an operator of a bus on the Central avenue line. The provisions of section 1 of the contracts, *Exhibits C-4* and *C-5*, complainant says, limits the operation of buses to members of its organization.

The contract, *Exhibit C-4*, in addition to the above quoted paragraph 1, contains the following:

"34. This agreement from and after March 19th, 1938, will remain in force for one year, and continue thereafter, unless either party gives thirty (30) days' notice in writing to the other of any change."

In conformity with paragraph 34 of the contract *C-4*, the complainant on February 18th, 1939, gave notice to the defendant Central Avenue Bus Owners Association, that the contract *Exhibit C-4* would expire March 19th, 1939.

The defendants Wendt and Scicutella, and the defendant Wendt's daughter, Mrs. Binns, became the original stockholders of the Wendt Bus Company, Inc. Four shares of the stock were issued to Scicutella; for its purchase, he executed and delivered to Wendt a promissory note for the sum of $14,400. As collateral security for the payment of the note, he gave the stock to Wendt.

The market value of the Wendt bus and franchise is appraised at approximately $36,000.

The complainant says it learned of the incorporation of the Wendt Bus Company, Inc., sometime in February, 1939, from published accounts of its formation in newspapers.

The defendant Central Avenue Bus Owners Association is an unincorporated voluntary association consisting of more than seven members. Its constitution and by-laws say its object is to "promote friendship and co-operate with all members and pledge itself to pool its interests and work in harmony with the city and state laws." It acts as a co-ordinating agency for the physical operation of the buses on the Central avenue line; and it handles the pooling of revenues derived from the operation of the buses. It has no title to the buses; operates none and is without authority to employ, or discharge, operators, or drivers thereof.

Scicutella charges that his alleged expulsion from the complainant's organization was unjust and without reasonable cause. He filed a counter-claim in which he states that he offered his dues to the complainant and that it refused to accept them; that, thereafter, without notice to him, or the submission of any charges against him, he was expelled from the complainant organization. He asserts that his stockholdings in the Wendt Bus Company, Inc., violated no provisions of the constitution, or the by-laws, of the complainant organization. He seeks to enjoin it from interfering with, or excluding him from, his membership in its organization, and asks that he be reinstated therein as a member.

The complainant alleges that it held a meeting of its executive committee on or about March 20th, 1939, and that such committee then expelled Scicutella (testimony, page 9). It admits that Scicutella was not informed that the committee would hold a hearing of charges against him for having violated the constitution or by-laws of the organization. It is evident that he was not present at any meeting, or hearing, held by either the executive committee, or the complainant organization, when alleged violations of the constitution or by-laws by him were being considered. The minutes of complainant's organization, or committee, meetings bear no such record and make no mention of his expulsion.

Article 5, section 1, of the complainant's constitution provides that the executive board of the complainant association "shall upon receipt of charges of any infraction of the rules or by-laws of this Association by any member or officer, inves-

tigate such charges, and upon finding such member guilty, may suspend, fine or expel or act, in any way that the Executive Board shall see fit to further the best interest of the organization." There is no evidence in the complainant organization's records that it was "in receipt of charges of any infraction of the rules or by-laws of the Association" by Scicutella.

The executive board, according to the complainant's constitution, consists of the president, vice-president and secretary-treasurer of the organization. The secretary-treasurer, Victor J. Wolfersberger, testifying for the complainant, stated that he became secretary-treasurer in February, 1939; and that during February, March and April of that same year, Frank O'Rourke was president and that William Meola was vice-president. Wolfersberger declared that he could recall but one meeting of the executive board that he attended, and that was sometime after the summer of 1939.

The vice-president, Meola, did not testify in those proceedings. The president, Frank O'Rourke, testified that he attended · a meeting in March, 1939. He was not certain that Meola attended the March, 1939, meeting. His testimony was not convincing.

In the course of the proceedings counsel for the complainant admitted: "We say there was no action at the meetings which would indicate any action taken against Scicutella except the action which may be recorded in the minutes of the meetings."

I can find nowhere in the testimony any satisfactory evidence that a meeting of the executive board, or a majority of it, was held in the month of March, 1939. The only testimony of attendance by a member of that executive board is the testimony of the president, O'Rourke. His testimony of the March, 1939, meeting stands uncorroborated either by the testimony of other witnesses, or by the complainant organization's minutes or records. O'Rourke in part, testified (testimony, pages 47-50):

"*Q.* He possibly didn't tell you in February, but isn't it true in March, 1939, at the meeting, Mr. Scicutella told you he owned stock in the company? *A.* He wasn't sure whether

he owned it or not. He told me that every time I came in contact with him. *Q.* So you people didn't know he held stock in the corporation or not on March 20th? *A.* We still don't know. *Q.* You still don't know. And you didn't find out in March or April, 1939, whether he held stock in the corporation? *A.* We never got information from any one. *Q.* And to-day you don't know whether he holds stock in the corporation? *A.* That's right. *Q.* And more particularly in March, 1939, and April and June, you didn't know whether he held stock in the company or not? *A.* No. *Q.* And yet you were the one that recommended the charges to the association, is that right? *A.* Yes. *Q.* And you sat as president when those charges were made? *A.* Yes. *Q.* Who made the charges? *A.* Who made the charges. I carried out the action of the men. It was brought up on the floor. *Q.* Who made the charges? *A.* I don't know the individual that made the charges. *Q.* You know the one that made the charges, Mr. O'Rourke? *A.* I knew the men's wishes. *Q.* You were present at the meeting? *A.* I don't know who the individual was. It was brought up on the floor. *Q.* As a matter of fact, there were only two or three members that brought it up on the floor, isn't that true? *A.* No, it was discussed among the general board.

"By the court: *Q.* What were the form of the charges? *A.* I would have to go back to the exact routine of investigating the corporation papers. *Q.* This particular time when the defendant was expelled, in what form were the charges brought, by word of mouth or writing? *A.* I don't know whether they were taking notes in writing because we have temporary members of the committee due to the fact some of the members were working. *Q.* You don't know whether they were in writing or not, that is, taken down in writing or not. But were there any written charges brought against the defendant? *A.* No written charges brought. *Q.* Merely by word of mouth on the floor? *A.* That's right. *Q.* And you have no record of that? *A.* Not that I know of. We take notes at times. *Q.* Who would take the record? *A.* Well, the temporary chairman or temporary secretary. *Q.* You were the chairman? *A.* Yes. *Q.* Did you take them?

*A.* Not myself. *Q.* Was anyone else told to take notes? *A.* I believe there was. *Q.* Who was it? *A.* I don't recall. *Q.* Who directed them to take notes? *A.* Well, the custom was—— *Q.* Not the custom. Who directed it? *A.* Well, naturally I directed them. *Q.* Do you remember who you directed to take notes. *A.* I don't remember offhand. At different times we substitute various drivers, and I just can't recall which one it was.

"Mr. Pesin: We have no records here.

"The court: Do you admit no records were kept?

"Mr. Pesin: of this executive board, no.

"The court: At which the expulsion took place?

"Mr. Pesin: That's right."

Counsel for complainant said (testimony, page 57) :

"Mr. Pesin: I wish it noted on the record that it is admitted no notice was sent to Mr. Scicutella at any time except what is contained in the letters in evidence from June 1st on."

And (testimony, page 62) :

"Mr. Pesin: If your honor please, any further reference to the minutes is objected to. The book is not in evidence. I admit for the sake of the record there is nothing in any minutes of the association at all that shows by the action of the executive board he was expelled. I think I have admitted that before."

There is no doubt that the so-called expulsion of Scicutella was entirely without justification. In *Supreme Council, Knights of Pythias,* v. *Eskholme, 59 N. J. Law 255; 35 Atl. Rep. 1055,* appears the following:

"In *Vivar* v. *Knights of Pythias, 23 Vr. 455,* it was held that a vote to suspend for ninety-nine years was, in effect, to expel, and the same is true of a vote to suspend indefinitely. And it was also held in that case that 'an attempt at expulsion, without conviction had in accordance with the rules of the society or under the general principles of law, is nugatory. The membership of the individual continues.' "

There is testimony of correspondence had by the complainant's counsel with Scicutella's counsel in which complainant alleges that Scicutella violated the constitution and

by-laws of the complainant organization; but that correspondence did not take place until after June 1st, 1939, some months after the alleged expulsion of Scicutella. It was offered and received in evidence without objection.

In *Venezia* v. *Italian Mutual Benevolent Society, 74 N. J. Law 433; 65 Atl. Rep. 898,* it was, among other things, said:

"It is contended by the relator that his expulsion was illegal because, among other reasons, there was no opportunity afforded him to be heard in his defense.

"We think this contention must prevail.

"A member of a benevolent association, against whom proceedings are pending which have his expulsion for their object, is entitled to make such defense as he may have to the charges upon which the proceedings are based, and if he is expelled without being afforded an opportunity to submit his defense he is deprived of a substantial right, which the ordinary principles of justice require that he should be permitted to enjoy. *Berkhout* v. *Royal Arcanum, 33 Vr. 103; Sibley* v. *Carteret Club of Elizabeth, 11 Id. 295."*

See *D'Aloia* v. *Unione Fratellanza Italiana of Vineland, 84 N. J. Law 683; 87 Atl. Rep. 472.*

Scicutella's membership in the complainant organization entitled him to the privilege of operating a bus. That privilege is a property right. He cannot be deprived of it by a ruthless or arbitrary exercise of power. When no certain rules governing procedure to expel a member from an organization exist, then reason dictates that the organization follow a course of action consonant with the principles of justice and equity. The action of the complainant in the so-called dismissal of Scicutella from its organization observed no principle of equity or justice. It was just a high-handed exercise of "the rule of might" and a wanton disregard of "the rule of right" to earn a livelihood. *Lo Bianco* v. *Cushing, 117 N. J. Eq. 593; 177 Atl. Rep. 102; affirmed, 119 N. J. Eq. 377; 182 Atl. Rep. 874.* See *Byrne* v. *Supreme Circle, Brotherhood of The Union, 74 N. J. Law 258; 65 Atl. Rep. 839.*

I do not agree with complainant that article 14 of its

constitution supports its action in expelling Scicutella. I find nothing incompatible in Scicutella's position as a stockholder in the Wendt Bus Company, Inc., and that of his position as a bus operator on the Central avenue line. There is no conflict of interests between the two positions. Article 14 does not say so. Article 14 is in effect a penal statute of the complainant's organization; and as such, it must be strictly construed.

Since the Board of Public Utility Commissioners did not approve the issue of stock by the Wendt Bus Company, Inc., until March 30th, 1939, Scicutella, under the circumstances, could not have been a legal holder of the stock before that date.

I do not believe that article 14 of the complainant's constitution was ever intended to apply to a situation such as exists here.

The evidence does not show that Scicutella's alleged investment in the Wendt Bus Company, Inc., constitutes him a member "in an organization in conflict with the interest of this [complainant] association." To grant complainant's prayer for an injunction in the circumstances would be doing violence to the principles expressed by the Court of Errors and Appeals in the case of *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299.* In that case the court quoted part of the language which Judge Baldwin used in the case of *Bonaparte* v. *Camden and Amboy Railroad Co., Bald. C. C. 205, 217.* That language this court very frequently expresses when applications for restraints are made. It is as follows:

"There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction."

The case presented by the complainant is, at best, a doubtful one. In *Ace Bus Trans. Co.* v. *South Hudson, &c., Association, 118 N. J. Eq. 31; 177 Atl. Rep. 360; affirmed, 119 N. J. Eq. 37; 180 Atl. Rep. 835,* the court said:

"Nearly all of the witnesses for the complainant were somewhat hesitant, lacked knowledge of minor details of

transactions which purported to sustain their case, and lacked recollection as to general facts surrounding dealings in which they were engaged. Their attitude suggested the inference that they were hiding facts which should have been presented to the court. I do not believe the complainants have sustained injury. In my opinion, the evidence precludes a reasonable probability of injury in the future. It is hardly necessary to state that in innumerable decisions in this state the complainants' rights in the subject-matter in dispute, and for the remedy sought must be clear to the court and free from reasonable doubts."

Scicutella is entitled to be reinstated in the complainant organization. He is entitled to an order restraining the complainant from interfering with his employment as an operator for the defendant, Wendt Bus Company, Inc., on its bus operating on the Central avenue line.

The contracts, *Exhibits C-4* and *C-5,* contain no provision which restricts or prevents an owner from operating a bus on the Central avenue line, despite the fact that the contracts *C-4* and *C-5* in the first paragraph thereof read "Members of the Central Bus Operators Incorporated with paid up books *to be* employed * * *." (Italics mine.) Those paragraphs refer to such members as are "to be employed." The reference is to future employes, and not to persons who already have been employed and are still being employed. The defendant Wendt had been an owner and operator of his bus on the Central avenue line for many years prior to the incorporation of his business, and its transfer to the Wendt Bus Company, Inc. He was engaged as an operator of a bus on the line during the period covered by the contracts, *Exhibits C-4* and *C-5.* The complainant when it executed both of said contracts had knowledge that he had operated, and was then engaged in operating, the bus. It offered no objections to his conduct as an operator and made no provision in either of the contracts barring him from operating a bus. Its objection now appears ill-timed and, I believe, lacking in good faith.

The complainant contends that under paragraph 28 of contract, *Exhibit C-4,* and under paragraph 28 of contract

*C-5,* it had the privilege of investigating "the corporation papers" of the defendant Wendt Bus Company, Inc., under certain conditions. The paragraphs referred to in both contracts are alike and read as follows:

"It is hereby agreed and understood that any bus owner incorporating his bus or busses, after the signing of this agreement, the representative of the bus operator's association shall have the privilege of investigating the corporation papers. In the event of any disagreement, they will have the privilege of using the Jitney Supervisor, as an arbitrator."

It does not appear that the complainant made any demand on any of the defendants for an investigation under the provisions of said paragraph until after it had expelled the defendant Scicutella from the union; and, then, not until after June 1st, 1939, when for the first time it, through its solicitor, communicated with the defendant Wendt Bus Company, Inc. The contracts provide for arbitration. No demand for arbitration was made; nor was any attempt made to arbitrate.

While contract *Exhibit C-5* is dated April 1st, 1939, it, in fact, was executed some time later—in the middle of the month of May, 1939.

The complainant, in my opinion, is not entitled to the relief it asks for the alleged violation of contract *C-4* before March 30th, 1939, or for the contract *Exhibit C-5* after April 1st, 1939. In *Levy* v. *Massachusetts Accident Co., 124 N. J. Eq. 420; 2 Atl. Rep. (2d) 341,* the court indicates that after an election has been made to terminate the continued existence of a contract, no suit in law or equity is maintainable thereon. *Dieckmann* v. *Walser, 114 N. J. Eq. 382; 168 Atl. Rep. 582; affirming, 112 N. J. Eq. 46; 163 Atl. Rep. 284.*

I am of the belief that the complainant's entire attitude in the instant case estops it from obtaining relief in this court. Having full knowledge of the facts surrounding the incorporation of the Wendt Bus Company, Inc., and Wendt's then interest, and prior title to the bus, it executed the contract, *Exhibit C-5.* It raised no objection to Wendt's status

until after it had succeeded in obtaining the execution of the contract *C-5*. Its conduct has not been such as to create an assurance of confidence in its motives.

I feel it has not been established by the evidence that the complainant is entitled to relief for specific performance of the contract. Its prayer for that relief will be denied. *Vandermade* v. *Appert, 125 N. J. Eq. 366; 5 All. Rep. (2d) 868; Cohen* v. *Cohen, 121 N. J. Eq. 299; 188 Atl. Rep. 244; Micheloni* v. *Troy Mills, Inc., 121 N. J. Eq. 117; 187 Atl. Rep. 168; Jaeger* v. *Ridgewood Park Estates, Inc., 120 N. J. Eq. 520; 186 Atl. Rep. 724.* The case of *Goerke Kirch Co.* v. *Goerke Kirch Holding Co., 118 N. J. Eq. 1; 176 Atl. Rep. 902,* holds that equity will not specifically enforce a contract that is uncertain or indefinite in its material terms.

The defendant Central Avenue Bus Owners Association acts as an agent for its members. It has not been contended in these proceedings that it exceeded its power as such agent for its individual members. It is not denied that it had authority to sign the said contracts in behalf of its members. The constitution, as above observed, indicates that the defendant Central Avenue Bus Owners Association is simply a convenience employed by the individual members thereof, owners of buses on the Central avenue line who are associated together for the purpose of: pooling revenues, the co-ordination of the running schedules of buses, and for such acts as may be more conveniently accomplished by a specially authorized committee acting on behalf of the individual members.

The complainant seeks from the defendant Central Avenue Bus Owners Association a discovery and inspection of the books and records of the defendant Wendt Bus Company, Inc., pursuant to the contracts, *Exhibits C-4* and *C-5*.

Those contracts were intended to deal with matters solely between the bus owners association and the complainant organization. The bus owners association evidently has no control over the incorporation papers of Wendt Bus Company, Inc. It has no power to compel that company to disclose any of its transactions. Furthermore, neither the bill of complaint nor the evidence, shows that the books or records of the Wendt Bus Company, Inc., are in the control of the

bus owners association. It does not appear that the bus owners association has authority to compel the defendant Wendt Bus Company, Inc., to display its books and records to the complainant. The bill alleges that demands for inspection were made upon the defendant bus owners association. The bus owners association, in its answer, denies that allegaton. No proof was offered at the hearing that such demand had been made upon the bus owners association.

While the bill of complaint alleges notice was given to the defendant bus owners association that the operation of the bus of the Wendt Bus Company, Inc., by the defendant Scicutella was in violation of the said contracts, and that demand was made upon it to cease such operation, the defendant bus owners association, in its answer, denies that such notice was given.to, or demand made upon it. There is no evidence that it received such notice. As above observed, the defendant bus owners association does not operate buses; and it does not appear to have the power to prevent the operation of buses by the Wendt Bus Company, Inc., or any of its agents.

The motion of counsel for the bus owners association for a dismissal of the bill of complaint as to it, is allowed.

Under all the facts and circumstances, I believe the bill of complaint should be dismissed. I shall advise an order to such effect.