Andrew G. Weiss and Charles A. Young *v.* The Musical
Mutual Protective Union and J. M. Allen, Thomas J.
Welsh, Charles Gernert, Gustav Espy, Chas. W. Gas-
ton, James Holley, Joseph Pannella, J. V. Yost, John
M. Muller, John Hoffman, John S. Brecht, Wm. P.
Schwartz and Jacob Sauerwein, constituting the Board
of Directors.

*Corporations—Beneficial associations—Expulsion of members—Manda-
mus.*

Courts may by mandamus compel the restoration of a member expelled
from a corporation organized for the mutual protection of its members,
and having a surplus fund in its treasury.

Where the charter of a corporation contains no power of expulsion, a
member can be expelled only when he has been guilty of some infamous
offense, or has done some act tending to the destruction of the society.

A member of a beneficial association the charter of which contains no
power of expulsion cannot be expelled because he issued a manifesto criti-
cizing its management and containing an invitation to other members to
participate in a meeting at which matters affecting the association were to
be discussed, where there is nothing to show that the manifesto tended
to disrupt or destroy the association, or cause the withdrawal of members
therefrom.

Where no appeal is authorized by the by-laws of a mutual protective
union, a resolution instructing the directors to investigate charges against
certain members, and, if found guilty, expel them ; and providing for an
appeal to the union from the decision of the directors, does not require
members so expelled to appeal to the union before resorting to legal pro-
ceedings, where it requires, as a condition precedent, a compliance with
the findings of the directors, and the payment of all expenses.

A notice to a member of a mutual protective union to appear before the
board of directors and answer charges looking towards his expulsion,
which contains no copy of the charges, is insufficient.

*Corporations—By-laws—Estoppel—Amendment of by-laws.*

Where the by-laws of a beneficial association are amended in an illegal
way by a mere resolution, members present at the meeting at which the
resolution was passed, and not objecting, are not bound by the illegal
resolution, if they elect to raise the question of its illegality subsequently.

Argued Nov. 9, 1898.    Appeal, No. 183, Oct. T., 1898, by
defendants, from order of C. P. No. 3, Allegheny Co., May T.,
1898, No. 382, issuing writ of peremptory mandamus.    Before

GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for mandamus.

The case was tried by the court without a jury. KENNEDY, P. J., filed the following opinion:

This is an application to compel by writ of mandamus the restoration of plaintiffs to membership in the Musical Mutual Protective Union, defendant, which is a corporation under the laws of Pennsylvania, organized for the "promotion of music and to unite the instrumental portion of the musical profession for the better protection of its interests in general," of which corporation the plaintiffs were members in good standing up to the time of their expulsion complained of in these proceedings. At the time of the expulsion of plaintiffs the membership of the organization was over four hundred, and it had a surplus fund of over $5,000.

It seems to be well settled that courts have power to supervise the acts of corporations, the principle being thus stated in Burt v. Grand Lodge, 66 Mich. 85: "The only ground on which this court can interfere with organized bodies by mandamus in aid of a member is that, as corporations, they are subject to our judicial oversight, to prevent their depriving members of corporate privileges." This principle certainly obtains where, as in this case, property rights are involved. Let us see whether such a case is presented here as justifies the court in interfering. It must be stated here, that by agreement filed, counsel for both parties waived the right of trial by jury, and also the question raised in the answer filed as to the right of plaintiffs to jointly maintain this proceeding.

At a meeting of the respondent corporation held December 5, 1897, the following preamble and resolution were adopted, viz:

" Whereas, a manifesto has been isued and received by quite a number of the members of this Union, which manifesto bears the signature, 'Pittsburgh Musical Society,' with signatures of president and secretary—A. G. Weiss, president, and Charles A. Young, secretary—and, further, that the manifesto states that the Pittsburgh Musical Society is a member of the National League of Musicians of the U. S.; and is further misleading, inasmuch as it reflects unjustly upon the integrity of this Union,

and, further, advocates the organization of a society under auspices that are in opposition to the action of the Union, after due notice to each member in writing, therefore, be it resolved, that the incoming board of directors make a thorough investigation of this action, summon such witnesses as they may deem proper to fix this act upon such member, or members, as are guilty of this action, and then proceed to a regular trial under the laws of this Union, and, if found guilty according to the laws of this Union, the penalty to be inflicted in such manner as the law warrants. An appeal from the board of directors to be allowed, provided, that the finding of the board be complied with first and all expenses of placing the entire record of the proceedings before the members of this Union be borne by the appellant, or appellants."

A copy of the manifesto referred to in the foregoing preamble and resolution is as follows, viz:

" A. G. Weiss, President,        Chs. A. Young, Secretary,
303 Smithfield Street,    Room 401, No. 1015, Penn Avenue.
                Office of Pittsburg Musical Society,
" Local 60, American Federation of Musicians (Affiliated with
                        A. F. of L.).
" Affiliated with United Labor League of Western Penna.
            "Members National League of Musicians of U. S.

"MANIFESTO.

"PITTSBURG, PA., November 29, 1897.
" To the Musicians of Pittsburg, Allegheny and Vicinity,
        Greeting:
" Owing to the unsatisfactory condition of musical protective organization affairs generally, in this vicinity, which was brought about in a peculiar manner, of which most of you are familiar, and inasmuch as the musicians here have, through beguilement and over-confidence in a few, been led into a misconception of the relations of the musical profession with other professions and trades, also on account of the decided stand taken by you against affiliation with laborers in other industries, as a result of the above-mentioned apparent trickery, it behooves the musicians to immediately rescind their former and present actions and place themselves on friendly terms with Union labor, ere the unionist class you as their enemies.

"In order that you may have an opportunity to hear this important subject discussed, both from Local and National standpoints, Pittsburg Musical Society, Local 60, American Federation of Musicians, has made arrangements for an open installation meeting to be held at K. of L. Hall, Market street and Third avenue, Friday morning, December 3, at 10 o'clock sharp, to which you are earnestly invited.

" We fully understand that for ten years you have had doctrines and ideas administered to you which generally were enacted into laws and they have finally proven absolutely disastrous, and it is now to your interest, both morally and financially, to consider the adoption of a new platform on which to labor in the musical profession, hence we impress on you to be present at this meeting.

" Prominent among those who will make addresses are : Hon. Owen Miller, St. Louis, President A. F. of M. ex-President N. L. M. of U. S.; Jacob Schmalz, Cincinnati, Secretary A. F. of M., member Executive Board N. L. M.; Geo. Nachman, Baltimore, 1st Vice-Pres. A. F. of M. and 1st Vice-Pres. N. L. M.; S. S. Bonbright, Cincinnati, Gen'l Organizer A. F. of M. and Editor 'American Musician;' I. J. Masten, Cleveland, President M. M. P. U.; M. M. Garland, Pittsburg, 4th Vice-Pres. A. F. of L.; Thos. Grundy, Pittsburg, Labor Leader; Mr. Klumpf, President United Labor League of Western Penn'a.

" Trusting you will appreciate the fact that the holding of this meeting is done with the sole purpose of showing you how you stand and the cause necessary for you to pursue to protect your interests, we are,

" Fraternally,

" PITTSBURG MUSICAL SOCIETY.

" Andrew G. Weiss, President.
" Charles A. Young, Secretary."

At a meeting of the board of directors of respondent, held January 23, 1898, the secretary was instructed to prefer charges against plaintiffs, and on February 14, 1898, each of the plaintiffs received notice to appear before the board on Sunday, February 20, 1898, to answer charges preferred by the secretary, of violation of article 2 of the constitution of the corporation, but no copy of the charges accompanied the notice. Plaintiffs ap-

peared in response to said notice, and at the meeting the charges
were read to plaintiffs, the same being as follows :

"No. 1 Wylie Ave., PITTSBURG, PA.
"Feb'y 14, 1898.

"To the Board of Directors of Musical Mutual Protective
Union :

"I, the undersigned, in accordance with your instructions, do
hereby charge A. G. Weiss and Chas. A. Young with the vio-
lation of article 2 of the constitution; said violation of the cir-
culation of a manifesto among our members, bearing date of
November 29, 1897, and bearing the signature of A. G. Weiss,
president, and Chas. A. Young, secretary, the contents of which
circular was calculated to disrupt and destroy the Musical Mu-
tual Protective Union, Local No. 15, N. L. M. of U. S.

"Fraternally yours,
"THOMAS J. WELSH,
"Secretary."

At this meeting one witness was called, who stated he had
received a copy of the manifesto. No other testimony was
taken, and no action was taken, the plaintiffs protesting that
they had not received any proper notice.   On February 28, the
plaintiffs each received another notice to appear before the board
on Sunday, March 20, to answer charges preferred by Thomas
J. Welsh, secretary, of violation of article 2 of the constitution,
inclosing a copy of the charges, as given last above, signed by
the secretary, but the notice was not accompanied by copy of
the manifesto.   Plaintiffs appeared in response to this notice.
At this meeting a copy of the manifesto was produced, which
the petitioners admitted they had signed, but no testimony was
taken, nor was there any effort made to show that the manifesto
was circulated by plaintiffs, or that it tended to disrupt or de-
stroy the union, or cause the withdrawal of members, nor, in-
deed, was there anything tending to sustain the charges against
plaintiffs, and they, after protesting as before, withdrew from
the meeting.   The matter was then dropped, but subsequently
at the same meeting, and without passing upon the guilt or
innocence of the plaintiffs of the offense charged, a resolution
was passed erasing the names of the plaintiffs from the roll of
membership of the union.   At this meeting there were present

eight of the members of the board, and while no votes were cast against the resolution of erasure, it is very doubtful that the requisite two thirds of those present were cast in its favor. Brecht, one of those present, says he did not vote; Welsh, the secretary, and nominally the prosecutor, says he did not vote. Allen, the president, says he only voted when there was a tie —and it also appears plainly that he had prejudged the case and was disqualified to vote.

Can the proceeding here recited be properly called a trial in which were involved the rights and privileges of the plaintiffs? And can it be said that they were deprived of those rights and privileges after a fair and impartial trial? The charter of this corporation contains no power of expulsion, and where no such power is so given it can only be exercised by the corporation when the member has been guilty of some infamous offense, or has done some act tending to the destruction of the society. Does the act complained of here tend to the injury or destruction of the union? The charge states that the manifesto bearing the signatures of the plaintiffs tended to disrupt and destroy the union, but there was no proof at this pretended trial that it did so tend. The circular, or manifesto as it is called, in itself, certainly contains nothing rendering it or its authors liable to such charge. In substance, it is nothing but an invitation to participate in a meeting at which were to be discussed matters affecting the interest of the union. It is plain that there were diverse opinions among the members with regard to the policy to be pursued by the union in reference to its relations to what are known as labor organizations; and it can be inferred, too, that those issuing the manifesto held views at variance with those controlling this union; but surely that is no reason why those who invite all members to attend a meeting where these different views should be discussed in order to reach a determination of the question as to what were the best interests of the association should be charged with an effort to disrupt and destroy the union. If the issuance of the manifesto was an offense at all it was a minor one, for the commission of which the plaintiffs could not be expelled from the society and deprived of their interest in the funds of the union. If we are correct in this, the mandamus must issue as prayed for in this case, but there are some other features which it seems proper

to discuss briefly. It is claimed by the respondents that it was the duty of the relators to first exhaust their remedies within the organization itself by appeal, which is provided for by section 2 of article 11 of the by-laws, and expressly provided for by the resolution of December 5, 1897, before asking for this writ. An examination of section 2, article 11 of the by-laws shows that it does not cover this case, and that so far as the by-laws were concerned the plaintiffs were without remedy by appeal or otherwise. As to the provision for appeal in the resolution of December 5, 1897, it seems to be an attempt to amend the by-laws, which must be done in a very different manner from that adopted here. The by-laws themselves prescribe the mode for their amendment, and this was not followed; however, this attempt of the resolution to provide an appeal impresses conditions which render it burdensome and ineffective, in that it requires a compliance with the findings of the board and the payment of all expenses. Another anomalous feature of the resolution of December 5, 1897, is that it makes the board of directors both prosecutors and judges of the matter in dispute. It is said that plaintiffs assented to this resolution by their pres ence at the meeting and failure to object thereto at the time. This, however, does not bind them to an illegal resolution and by-law, if they elect to raise the question of its illegality subsequently. The plaintiffs claim, too, and with grounds, we think, that the notices of the meetings for the trial on February 20 and March 20, 1898, were insufficient in that they contained no complete copy of the charges preferred. Objection also is raised by the plaintiffs that all the proceedings leading to their expulsion were taken on Sunday, and for this reason they are invalid. We have not deemed it necessary to discuss this objection, as well as many others raised by the relators, it being very plain that this expulsion must fall for other reasons given.

It seems clear that provisions of the constitution and by-laws of the respondent corporation which were intended for the protection of members against illegal expulsion, and to secure to them a fair and impartial trial, were violated in both the letter and spirit on the trial of these plaintiffs, if such proceedings can be called a trial.

Upon the question of damages claimed by the plaintiffs to be allowed them in this proceeding, no sufficient testimony was

taken to enable the court to pass on at this time, and it must remain open.  What we determine now is that the mandamus must issue as prayed for.

And now, to wit: July 21, 1898, it is ordered that judgment be entered in this case for plaintiffs, and that a peremptory writ of mandamus issue; costs of this proceeding to be paid by the defendants.

*Error assigned* was the order of the court.

*E. G. Ferguson,* with him *J. S. Ferguson,* for appellants.—Mere informality in the proceedings for removal will not justify interference by mandamus when it is evident that there are just grounds for amotion, and that the accused has been acting in hostility to the corporation: High on Extraordinary Legal Remedies, sec. 301; Com. v. Union League, 135 Pa. 301.

At the time appellees became members of the society they promised to support the constitution and by-laws.  Therefore, when they were expelled, it was on a trial and conviction by a tribunal of their choice, which like an award of arbitrators, concludes them: Com. v. German Society, 15 Pa. 251; Sperry's App., 116 Pa. 391.

If the power of expulsion exists, the offense need not be specifically provided for by the charter: Com. v. St. Patrick Benevolent Society, 2 Binney, 448; Com. v. Philanthropic Society, 5 Binney, 486; McAlees v. Supreme Sitting Order of Iron Hall, 13 Atl. Rep. 755.

In the case of Toll v. Crimean et al., Trustees, 13 Montgomery County Law Reporter, 33, a resolution to suspend sick benefits, passed on Sunday, was held not to be illegal.  Mandamus is a remedy for the enforcement of a definite, certain, legal right, and will not be used where the right to be vindicated is doubtful: Coquard v. Drainage District, 34 U. S. App. 169.

*A. E. Anderson,* for appellees.—The courts have power of supervision over corporations to prevent their depriving members of corporate privileges: Burt v. Grand Lodge of Masons, 66 Mich. 85; People v. Alpha Lodge, etc., 69 N. Y. St. Rep. 593.

Without an express power in the charter no man can be disfranchised, unless he has been guilty of some offense which

either affects the interests or good government of the corporation or is indictable by the law of the land : Com. v. St. Patrick Ben. Soc., 2 Bin. 441 ; Evans v. Phila. Club, 50 Pa. 107.

When one method of punishment is provided for the violation of a by-law, all other methods are excluded : Child v. Hudson's Bay Co., 2 P. Wms. 207 ; Angell & Ames on Corp. sec. 360 ; Kirk v. Nowill, 1 T. R. 125.

The resolution or by-law in this case leaves it in the power of the board to determine both the offense and its punishment. It is similar in principle to the by-laws discussed in the following cases where charters were refused on account of the indefinite power conferred : Butchers' Beneficial Assn., 35 Pa. 151 ; Beneficial Assn. of Brotherly Unity, 38 Pa. 299 ; Diligent Fire Co. v. Com., 75 Pa. 291.

The proceedings connected with the trial of the relators are illegal and irregular and therefore null and void, and were conducted in an unfair, unjust and arbitrary manner: Com. v. Union League, 135 Pa. 327 ; Becker v. Berlin Ben. Soc., 144 Pa. 232 ; Case of St. Mary's Church, 7 S. & R. 535 ; Dunston v. Imperial Gas Light Co., 3 B. & Ad. 125 ; Stohr v. San Francisco Mus. Fund Society, 82 Cal. 557 ; Pulford v. Fire Dept., 31 Mich. 465 ; Budd v. Street Ry., 15 Oregon, 413 ; Com. v. Detwiller, 131 Pa. 614; Roehler v. Mechanics' Aid Society, 22 Mich. 86 ; Com. v. German Society, 15 Pa. 251 ; Com. v. Penna. Ben. Society, 2 S. & R. 140 ; Com. v. Guardians of the Poor, 6 S. & R. 468; Washington Ben. Soc. v. Bacher, 20 Pa. 429 ; People v. Musical Union, 47 Hun, 273 ; People ex rel. Deverell v. Musical Union, 118 N. Y. 101; Com. v. McCloskey, 2 R. 373 ; Washington Ins. Co. v. Price, 1 Hopk. Ch. 1 ; Curry v. Claysville Cemetery Association, 5 Pa. Superior Ct. 289 ; Trustees v. Bailey, 10 Fla. 112; Labouchere v. Earl of Wharncliffe, L. R. 13 Ch. Div. 346 ; Com. v. Wickersham, 66 Pa. 134; Rittenhouse's Est., 140 Pa. 172 ; Craig v. First Presbyterian Church, 88 Pa. 47 ; Schlichter v. Keiter, 156 Pa. 146 ; Com. v. Guardians, etc., 6 S. & R. 469 ; Com. v. Green, 4 Wh. 605; Knight of Honor v. Wickser, 72 Tex. 257; Loubat v. LeRoy, 40 Hun (N. Y.), 553.

A member must have a fair trial before an impartial tribunal. Courts will not sanction expulsion and forfeiture of property rights upon any other condition : State v. Fraternal Mystic

Circle, 9 Ohio C. C. 364; Otto v. Journeymen Tailors' P. & B. Union, 75 Cal. 308; Von Arx v. San Francisco G. Verein, 113 Cal. 377.

PER CURIAM, January 3, 1899:

The judgment entered by the learned court below in this case is affirmed on the opinion of the court.