Gaestel, for many years a member of Local Union 26 of the Brotherhood of Painters, Decorators and Paperhangers of America, was expelled last summer from the local and from the brotherhood. He seeks the decree of this court that the expulsion is void and of no effect.
Gaestel wrote, for publication, a letter to one of the Newark newspapers, and it was published March 28th, 1935. In *Page 359 
it, he urged all trade unionists "to clean house in their respective organizations. Let us remove all racketeering labor leaders whose selfish interests reflect so strongly on the rank and file."
The same evening, was held a meeting of District Council No. 10, a body composed of delegates from several local unions of the Brotherhood, including Local 26. A discussion of the letter terminated in a motion that Gaestal be summoned to the council's next meeting.
Gaestel appeared before the council April 11th as did a committee of the Newark Building Trades Council, of which Local 26 was a member. The building trades committee demanded a public apology from Gaestal. The president of the district council called on him to deny writing the letter or else to prove his implied charge that some labor leaders were racketeers. He responded with a defense of his letter. After Gaestal and the building trades committee had withdrawn from the meeting, the council took action: "On motion, Brother Gaestal is to be served with formal charges of violation of section 270, general constitution."
Charges were drawn in which the district council was named as complainant and in which Gaestal was accused of violating section 270 "as more fully appears in the following statement: Having an article published in Newark Star Eagle March 28th, 1935, regarded as libelous to the Building Trades business agents and injurious to the reputation of trade unions and their leaders." Section 270 may here be quoted:
"Any officer or member * * * who creates dissension among the members, or who works against the interest and harmony of the Brotherhood * * * shall be given an impartial trial, and if convicted shall be punished as the Local Union may decide."
Again Gaestel came before the council and pleaded not guilty, "on the ground that said section [270] did not cover his case." A "committee of investigation" or trial jury of five men was then chosen by lot from among the members of the council present — about fifteen in all. The accused had a right to challenge three, but he did not exercise that right. *Page 360 
At the trial, May 2d, Gaestal was asked, "who are the racketeering labor leaders whose selfish interests reflect so strongly on the rank and file?" He refused to answer, and took no part in the trial on the ground that "the trial committee is unconstitutional according to section 289." No evidence was received, although I take it that the writing of the letter was admitted by Gaestal. The jury immediately found him guilty as charged under section 270, and so reported to the council. The council thereupon voted "that Gaestel be ordered to make a retraction in the Star Eagle of his statements made in that paper on March 28th. Failing to do so, he is to be expelled from the Brotherhood."
Section 289, on which Gaestel relied for ignoring the trial, reads:
"No officer or member who is a party to or directly interested in any case, or trial, shall act as a member of the committee of investigation."
His point was that the members of the council were disqualified from sitting on the jury, since the council as a body was his accuser.
On June 27th, Gaestel was informed that the council had decided that sufficient time for the retraction had been given. "Therefore, unless you make this press retraction by Tuesday night, July 2d, and submit a verbatim copy thereof for the Council's approval, you shall be expelled." On July 2d, he went to the place of meeting of the council and asked to be admitted in order to inquire exactly what he should retract, as his letter contained a good many statements. He waited outside the door for an hour or so and then was told that he had been expelled.
An appeal by Gaestel to the general executive board of the brotherhood was not sustained.
The reader may have noted that section 270 of the brotherhood's constitution under which complainant was tried, specifies that the accused person, if convicted, shall be punished as the local union may decide. Judgment against complainant was rendered by the district council without consulting *Page 361 
the local union. It may also have been observed that the trial committee found Gaestel guilty without receiving any evidence. He does not, however, urge either of these defects as a ground for annulling his dismissal from the union.
At the hearing in chancery, complainant urged as one of the bases of a favorable decree that the judgment against him coupled with the subsequent action of the council, was unreasonable, in that he was directed to make a retraction without being told exactly what to retract and that when he waited on the council to make inquiry in this respect, he was refused admittance. This supposed defect is not alleged in the bill and so perhaps needs no consideration. However, I have no doubt that Gaestel knew what part of his letter was obnoxious to the council. He was instructed to submit a copy of his retraction for the council's approval. He could have done so and would readily have learned whether it was sufficient in their eyes. The proceeding against him was not defective in this respect.
Some of the grounds alleged in the bill for avoiding the action of the council, are not supported by the proofs: That a member of the trial committee named McCann was the same person who moved in the council that Gaestel be placed on trial, a circumstance from which prejudice might be inferred; that the trial committee made no report of the trial to the council and failed to submit to the council Gaestel's protest, and that the council sentenced him without receiving such a report or copy of his statement: that the proceedings against him in the council were arbitrary and were instituted without just cause for the purpose of securing his expulsion; that the general executive board's refusal to sustain his appeal was arbitrary and calculated to sustain the malicious acts of the council.
The bill also avers that the charge against Gaestel was untrue and even if true, was not a violation of section 270. The gist of the charge was the accusation that he wrote the letter. The added statement that the letter was regarded as libelous and as injurious to the reputation of trade unions and their leaders is mere explanation of the reason for preferring *Page 362 
the charge. It sets forth the view of the committee from the Building Trades Council in which the district council concurred. The charge was true, that is, Gaestel wrote the letter. Whether his conduct constituted a violation of section 270 depends on whether the letter created or tended to create dissension among his fellow members and whether it operated against the interest and harmony of the brotherhood.
In the winter and spring of 1935, work in the building trades was scarce; members of the brotherhood had employment only on rare occasions. Their dues were burdensome. Gross misconduct by a few leaders of other building trades unions had been established in court or had openly been charged. Gaestel's letter might create in the minds of his fellow members a suspicion of their own officers and business agents; a doubt whether opportunity for employment was being impartially distributed among the members; a question whether their officers were wholeheartedly working for the union or were receiving secret pay from contractors. A trial committee might reasonably find Gaestel guilty of violating section 270. Let it not be understood that chancery will retry the case in order to determine whether or not the member is guilty. Connelly v. Masonic Mutual Benevolent Association,58 Conn. 552; 20 Atl. Rep. 671. This court received evidence relating to the truth of the charge only because of its bearing on the good faith of the proceedings against Gaestel. His innocence might have been so clear as to indicate that the trial jury acted maliciously or by mistake.
The last ground on which the aid of this court is sought, is that the trial committee was not constituted as required by the constitution of the brotherhood. The constitution constitutes a contract on which each member may rely for protection. Harris
v. Geier, 112 N.J. Eq. 99. That constitution contemplates that a member of the union shall be placed on trial only when charged by another individual member. Charges shall be in writing "and must be signed by the member making them" (section 283). The accuser cannot sit on the trial committee which shall be "selected from the members present excluding the accused and accuser" (section 288). *Page 363 
"No officer or member who is a party to or directly interested in any case or trial shall act as a member of the committee of investigation" (section 289).
The accusation against Gaestel was not made by an individual member of the union as intended by the constitution but was made by the council as a body. This is a minor irregularity not sufficient in itself for upsetting the proceedings and not urged for that purpose by counsel. "No technical precision can be expected or required in the proceedings of such associations."Burke v. Monumental Division No. 52, B. of L.E.,273 Fed. Rep. 707, 716. But counsel do urge that the action of the council in making the charge disqualified the members of the council from trying Gaestel; that the accusation should have been referred to the local union for trial by an impartial jury.
Neither the records of the union nor other evidence in the cause show whether or not the vote of the council to prefer charges against Gaestel was unanimous. But the council acted as a body and all its members must be considered as Gaestel's accusers and as such, debarred from trying him. This is not a mere technicality. The real question at the trial was not whether Gaestel had written the letter, for that was admitted. The issue was whether the writing of the letter was an act of disloyalty to the union for which Gaestel should be punished; whether, by writing it for publication, he raised dissension among the members and worked against the interest and harmony of the brotherhood. This question — on which no evidence was received at the trial — had already been decided against Gaestel by the jurymen before the trial began; the vote to prefer the charges was a declaration of his guilt. He was not tried by a jury selected in the manner required by the constitution and he did not have the fair and impartial trial guaranteed by the brotherhood. On this ground, the court will come to his aid to secure his reinstatement. People v. Musical Mutual ProtectiveUnion, 118 N.Y. 101; 23 N.E. Rep. 128; Weiss v. Musical MutualProtective Union, 189 Pa. 446; 42 Atl. Rep. 118; Fales v.Musician's Protective Union, 40 R.I. 34; 99 Atl. Rep. 823.
 There will be a decree for complainant. *Page 364