The plight in which the complainant seeks the intervention of this court is her expulsion from membership in the defendant labor union. It is significant to explain forthwith that there is no discord between the employer, Young's Rubber Corporation at Trenton, and the complainant, or between the employer and the labor organization. Upon the exclusion of the complainant from the union, her employer was contractually obligated to terminate her employment. The controversy apparently developed from the chronic antagonism toward her of certain of her fellow workers. The fact is tacitly acknowledged that the complainant was energetic, adept, and proficient in her occupation. Envious suspicion and jealously probably generated the social feud. A relatively large group of associated employees ultimately declined to work with her and therefore the predicament was brought *Page 174 
to the attention of the officials of the union. Apprehensive that the employees of the packaging department would engage in an indefensible walk-out, the district representative sought to ameliorate the unfortunate situation by recommending the course actually pursued.
The ever-serviceable charge of "conduct unbecoming a member" which incidentally seems to encircle much and specify little, was presented against her and after a hearing to which reference will be presently made, the members of the union unanimously resolved to dismiss the complainant from membership in the organization.
Assuredly, the entire set of events is an internal affair of the labor society. Equally evident is the consequent deprivation of any opportunity available to complainant to pursue a similar occupation in Trenton or in its vicinity. Nevertheless, the complainant has not undertaken to invoke and exhaust the remedies afforded to her by the constitution and by-laws of the union but has chosen initially to appeal to this court to nullify her expulsion and direct her immediate reinstatement.
The story of this case as unfolded by the testimony cannot be related in all its factual episodes in a mere memorandum of conclusions. It is to be realized that Chancery does not furnish a retrial of the case to determine anew the guilt or innocence of the union member. Gaestel v. Brotherhood of Painters, c.,120 N.J. Eq. 358, 362; 185 Atl. Rep. 36; Connelly v. Masonic MutualBenevolent Association, 58 Conn. 552; 20 Atl. Rep. 671. The inquiry when undertaken by this court is usually concentrated on the good or bad faith inspiring the action of the union and on whether the expulsion of the member and the underlying causes are capricious or contrary to public policy and natural justice.
The organic law of the labor union ordained that the complainant so accused should have the substantial right to know the nature of the charge made against her and an opportunity to be heard in denial, refutation, or defense of her behavior. Such a quasi-judicial proceeding need not be conducted with the formality and established precision of our public courts, but in material respects the procedure should be reasonably *Page 175 
consonant with our accepted conception of due process of law. Natural justice requires that notice, a hearing, and an opportunity to present defenses must precede condemnation.Byrne v. Supreme Circle, c., 74 N.J. Law 258;65 Atl. Rep. 839; Gaestel v. Brotherhood of Painters, c., supra; Lo Bianco
v. Cushing, 117 N.J. Eq. 593, 602; 177 Atl. Rep. 102; affirmed,119 N.J. Eq. 377; 182 Atl. Rep. 874; Local No. 2, c., v.Reinlib, 133 N.J. Eq. 572; 33 Atl. Rep. 2d 710.
The complainant received informative notice of the meeting at which her alleged misconduct was to be considered. She did not request any postponement and appeared voluntarily and without objection. It is not apparent that any delinquency in the service of the formal notice of the meeting reacted to her prejudice. She was well aware of her alleged offense. A few words concerning it will be illuminating. The employer is engaged in the manufacture and sale of rubber contraceptives. Women, including the complainant, were employed in the packaging department, and each was compensated at a rate based upon the quantity of packages she prepared. In July or August, 1944, an employee in that department who was a member of the local union asked the complainant how many gross of a certain package number she was "putting out in a day." Then came the notable question: "Are you going to co-operate?" The complainant imparted the information of that occurrence to the forelady who, I believe, is classified as an employer-executive, and soon a committee of the local union was summoned to the office of the company where the announcement was made that the members employed in the packaging department were designedly dilatory.
Upon her election to membership in the local union, the complainant had pledged her honor "to so conduct myself at all times as not to bring reproach upon my union." The members of the union avow that the tale related by the complainant to the management was synonymous with a false and infamous statement that the union through the influence of its members was endeavoring to retard the production of the packaging department. The complainant insists that the only object of her interview with the forelady was to ascertain *Page 176 
whether there was any prescribed limitation restricting her efforts.
Let me digress from this commentary at this point to state that if a voluntary trade organization should ordain that a member who in the pursuit of his occupation exceeds the average level of industry and production of his fellow-workers, shall be expelled for conduct unbecoming a member, I would experience no hesitancy in invalidating such a regulation as positively repugnant and inimical to our traditional public policy. The freedom of an individual to excel in any field of lawful activity is one of our national ideals and a substantial right which the individual may not himself barter away. Cameron v. International, c., UnionNo. 384; 118 N.J. Eq. 11; 176 Atl. Rep. 692.
Resuming the references to the facts, it is also evident that a meeting of the members of the union was called; the complainant attended; a so-called jury was empaneled; the complainant exercised her right to peremptorily challenge a stated number of the jurors; the complaint was reduced to writing; witnesses and the complainant were heard by the jury apart from the assembled members. The jury resolved that the present complainant was guilty as charged and announced that conclusion to the presiding officer. The recommended sentence of expulsion from the union was then submitted to the membership for approval and confirmation. The members of the union (seventy-five to one hundred present), among whom were many who were not engaged in the packaging department, immediately requested definite information from the witnesses and from the complainant relative to the alleged misconduct of the complainant. Not only those advocating her exclusion, but the complainant herself addressed the assemblage of members. It may be inferred from the evidence that the members were thereupon figuratively drenched with a tropical shower of reciprocal invective and vituperation. The turbulent scene may have portrayed something akin to an "unpopularity contest," but certainly the complainant was afforded the privilege of a trial and the eventuality was a unanimous vote to expel her from the organization. *Page 177 
Sufficient, I think, has been divulged to disclose that the controversy is essentially a social one involving the discipline administered by the union to the member. The right of a labor union to discipline its members is indubitable, provided only (1) that the pertinent rules of the constitution and by-laws of the association are followed (Blanchard v. Newark Joint DistrictCouncil, 77 N.J. Law 389; 71 Atl. Rep. 1131); (2) that the discipline is undertaken and executed in good faith (Lo Bianco
v. Cushing, supra); and (3) that the disciplined member is afforded an opportunity to be heard, and otherwise accorded the benefit of procedure commonly included in the notion of due process (State, Zeliff, Prosecutor, v. Grand Lodge,53 N.J. Law 536; 22 Atl. Rep. 63).
The district representative of the American Federation of Labor, who at critical times presided at the meeting and whose instructions were observed in conducting the hearing, does not appear to have been actuated by any ill-feeling toward the complainant. At the conclusion of the meeting, he informed the complainant of her "right" to have the justification of her expulsion reviewed by appeal to the president of the American Federation of Labor, and he gave to her the name and address of the secretary, to whom she should dispatch the notice of her appeal.
A dispassionate mind might not measure the impugned act of the complainant with as much gravity and importance as that attributed to it by the local union and its members. The prejudice of some members may well have narrowed the horizon of the others. The members, however, are apparently convinced that the complainant deliberately imperiled the integrity of the organization and its members. Courts are not predisposed to subvert the unanimous judgment of a hundred individuals concerning a factual matter, except for most cogent and imperative reasons.
This court does not attempt to exercise purely visitorial powers over such associations or their proceedings. Mayer v.Journeymen Stonecutters' Association, 47 N.J. Eq. 519;20 Atl. Rep. 492; Cameron v. International, c., Union No. 384, supra;Ace Bus Transportation Co. v. South Hudson, c., Association,118 N.J. Eq. 31, 43; 177 Atl. Rep. 360; *Page 178 affirmed, 119 N.J. Eq. 37; 180 Atl. Rep. 835. Courts are nevertheless conscious of the duty to intervene where the natural and inalienable property rights of an individual arearbitrarily assailed. Barr v. Essex Trades Council, 53 N.J. Eq. 101; 30 Atl. Rep. 881; The Jersey City Printing Co. v.Cassidy, 63 N.J. Eq. 759; 53 Atl. Rep. 230; Lo Bianco v.Cushing, supra. There is, however, a diaphragm at which this court although possessed of jurisdiction will in some cases refrain from interposing in the internal quarrels and conflicts of voluntary associations. Officious intervention may amount to disadvantageous intrusion, especially where the members of such associations have chosen to erect their own tribunals and their own procedure to adjust their own differences. Where in such affairs property rights are implicated, considerations of policy rather than of jurisdiction arise. The persons who comprise voluntary unincorporated associations such as religious or fraternal societies or trade unions customarily enact and promulgate their own organic law and the rules and regulations by which the organization and its members are to be governed. The policy of permitting them to govern themselves within the orbit and capacity of the organization is expedient and pragmatical. The courts are present to safeguard the substantial rights of the members from impairment by unconformable, irresolute, despotic, unlawful, or iniquitous action.
And so, for many years the general rule has prevailed that it is the duty of a member of a voluntary organization to first exhaust his or her available relief within the remedial privileges of the society before resorting to the courts for redress. Zeliff, Prosecutor, v. Grand Lodge, supra; OceanCastle, c., v. Smith, 58 N.J. Law 545; 33 Atl. Rep. 849;affirmed, sub nom. Smith v. Ocean Castle, c., 59 N.J. Law 198;35 Atl. Rep. 917; Roxbury Lodge v. Hocking, 60 N.J. Law 439;38 Atl. Rep. 693; Grant v. Ancient Order of Foresters,75 N.J. Law 109; 66 Atl. Rep. 902; Walsche v. Sherlock, 110 N.J. Eq. 223;159 Atl. Rep. 661; Emma v. Loggia Fasci Italici No. 16, Sons ofItaly, 7 N.J. Mis. R. 387; 145 Atl. Rep. 630; Cameron v.International, c., Union No. 384, supra. *Page 179 
The general rule has its appendant exceptions. For example, an immunity from the rule arises where property rights are implicated, and it is manifest that a resort to the remedies afforded by the association would be futile, illusory, or vain,Walsche v. Sherlock, supra, or where knowledge of the opportunity to seek redress within the agencies of the society has been arbitrarily withheld from the aggrieved member. Cf.Chew v. Manhattan Laundries, Inc., 134 N.J. Eq. 566;36 Atl. Rep. 2d 205.
It is revealed that the complainant was a charter member of the local union and served as secretary for one year after its creation. She had in her possession during that period printed copies of the constitution and by-laws. While it is irrational to suppose that she memorized all the terms and provisions, there remains the additional acknowledged fact that immediately following her expulsion she was apprised of her right to appeal to the president of the Federation. It is observed that the prosecution of the appeal is expressly conferred as a "right" and that the institution of the appeal is not subject to any prescribed limitation of time. Indeed, that right is still available to her. Cf. Chew v. Manhattan Laundries, Inc.,supra. Moreover, there is not a feather of proof that her appeal would be futile and vain.
I am not insensible of the complainant's present dilemma, but I am unable to imagine a case more appropriately referable to the appellate authorities of the association unless it is to be resolved that the mere involvement of the member's private property right obliges me to exonerate the complainant from her failure to seek relief in that direction.
In so contending the complainant confronts the positive declarations of our Court of Errors and Appeals: "Even where property rights are involved, there will be no judicial interference until the remedy within the body has been exhausted, if it is adequate and the members have so stipulated."Mogelever v. Newark Newspaper Guild, 124 N.J. Eq. 60;199 Atl. Rep. 56; Chew v. Manhattan Laundries, Inc., supra.
"It is the settled rule that where the question is a social one, involving discipline or the conduct or standing of a member of such an association, he must exhaust his remedy in the *Page 180 
tribunal of the organization before he can invoke the aid of the civil courts; and even if property rights are involved, and the rules of the association provide a remedy within that body, and the members have agreed to exhaust that remedy before application to the law courts, the latter will not interfere until that remedy has been exhausted." Cameron v. International, c.,Union No. 384, supra.
The right of appeal afforded the complainant appears to be adequate to obtain a review of the proceedings and the sentence of expulsion. The presumption is that the superior appellate authority will correct any illegal or unwarranted decision in the forum below. Zeliff v. Grand Lodge, supra.
The complainant expressly pledged to "faithfully observe the constitution and laws of this union," and "to comply with all rules and regulations for the government" of the union. Exhibits, constitution, section 3, marked DU-1; constitution, section 4, marked C-5. The rules and regulations pertaining to the trial of offenders and the right of appeal may be found in article X of the constitution. The complainant thus stipulated to "comply," that is, "to yield, to accommodate or adapt oneself to, to act in accordance with" the applicable rules and regulations which,inter alia, supply the remedy of appeal. That a member aggrieved by the outcome of the trial would pursue the designated appeal was assuredly contemplated. I am not, however, unmindful of the opportunity in some circumstances to bear heavily upon a distinction between an agreement to comply and an express promise to refrain from acting otherwise. The action to be taken by the court in the present cause need not depend on any such delicate distinction.
The complainant requests this court to immediately capture the controversy and exercise its extraordinary mandatory powers. In the circumstances of the present case, I am constrained to withhold any judicial intervention in this internal controversy of the union until the complainant has first pursued her remedy within the jurisdiction established for that purpose by the organization.
A decree will be advised denying the prayer of the bill, without prejudice and without costs. *Page 181