PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* UNIÓN DE CHÓFERES, ETC., Respondent.

No. 33. Argued August 26, 1952.—Decided October 17, 1952.

*Víctor Gutiérrez Franqui,* Attorney General, *Aurelio Torres Braschi,* Assistant Attorney General, *Hiram R. Cancio Vilella* and *Ramón Acevedo Oliveras,* for petitioner. *José M. Cueto, Enrique Cuilan García* and *Angel L. Saavedra,* for respondent.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Puerto Rico Labor Relations Board issued an order directing the *Union de Chóferes y Mecánicos núm. 1 de San Juan y Ramas Anexas, Inc.,* (1) to cease and desist, in any manner whatsoever, from unjustifiably excluding or suspending from the membership of said labor Organization Teodoro Dones Martínez or any other employee in a collective bargaining unit on whose behalf the labor organization has executed an all-union or maintenance of membership agreement, and (2) to take the following affirmative action: (a) to make the petitioner Teodoro Dones Martínez whole for any loss suffered by him in his income during the time he was suspended from the membership of the Union, and hence, from his employment, paying to him a sum of money equal to the amount he normally would have earned as wages from the date of his discharge until his reinstatement, after de-

ducting the net income, if any, received by him during that same period, as wages, and such amounts, if any, as he failed to earn during that period without any justified excuse in other available employments, (*b*) to post in conspicuous places in the offices of the Union the notice that was attached to the Order and (*c*) to notify the Chairman of the Board, within ten days after the date of the Order, what steps the Union had taken to comply therewith. The Union failed to comply with said Order and the Board has petitioned us for enforcement thereof. The Union has appeared and objected to the enforcement of said Order on the ground that the Board committed several errors of fact and of law, hereinafter referred to, and, furthermore, because the Decision and Order of the Board is academic.

The facts which gave rise to the Decision and Order of the Board may be summarized thus: By 1949, the *Unión de Chóferes y Mecánicos núm. 1 de San Juan y Ramas Anexas, Inc.*, had entered into a collective bargaining agreement containing a closed-shop clause with the Puerto Rico Transportation Authority, Bus Division. Teodoro Dones Martínez, an employee, was covered by said agreement. Charges were filed with the Union against Dones accusing him of treason and disloyalty towards his Union. The Board of Directors of the Union unsuccessfully attempted more than once to summon Dones to the hearing of the charges filed against him. He was finally summoned to appear on August 23, 1949, at 8:30 a.m. Dones appeared on said day about 11:00 in the morning but the Board had already tried him, not for the original charges, but for contempt on account of his refusal to receive the correspondence from the Union and to appear at the hearings to which he had been summoned. After setting aside the punishment of one-year suspension it had imposed upon him that day, the Board of Directors heard Dones again and ratified the previous punishment. After being notified by letter of that decision and availing himself of the right granted to him by the Rules and Regula-

tions of the Union, Dones appealed from the decision to a General Assembly. The Assembly was held during September 13 and 14, 1949, and among other matters it passed upon Dones' appeal from the punishment for contempt. After passing upon said appeal the General Assembly imposed upon Dones the same punishment of one-year suspension for contempt. On September 12 Dones had preferred a charge under oath against his Union charging it with having committed unfair labor practices in unjustifiedly separating him from its membership. After a preliminary investigation, a complaint based on the charge preferred under oath by Dones against the Union was filed in the Board on March 8, 1950, and after the proper proceedings the Board issued the · Order it now asks us to enforce. The respondent Union alleges that in issuing said order the Board committed the following errors of fact in making findings unsupported by evidence:

"(1) In concluding that the petitioner was 'fundamentally and primordially tried for acts of indiscipline, treason and disloyal conduct towards the Union that was trying him and for his actions while being a member of the previous Board of Directors of the Union.'

"(2) 'In concluding that the evidence alien to the contempt prejudiced those present against the petitioner'; and

"(3) In concluding that 'any attempt on the part of Dones to defend himself would have been of no avail and it cannot be accepted, therefore, that his attitude is equivalent to a waiver of his rights.'"

█ The Board made the following findings, among others, some of which we have already set forth:

"During the Assembly of the 13th, one of the members of the Union moved that the nature of the Assembly be modified in order to make it a General Assembly, instead of a Special Assembly. At the same time he moved that the order of the day be modified so that the case of Dones be considered first. Upon the approval of this motion, the President, Juan González Maldonado, left the presidency to the Vice President, Díaz Mahonés,

and took the floor proceeding to present documentary evidence and to make unfavorable remarks regarding Teodoro Dones' activities in connection with the Union, without confining himself to the case of contempt. This evidence included a photostatic copy of a letter addressed to the Employer by Raimundo Lebrón, the Chairman of the former Board of Directors of the Union and of which Board Dones was a member. In that letter Lebrón asked the Employer to do him certain favors regarding his sons who were working for the Authority. It was intended, through the presentation of the letter, to show that Dones, who had been an outstanding member of the Board of Directors under Lebrón, was the sort of person who favored his employer. Immediately thereafter Maldonado presented in evidence before the Assembly several copies of bills and disbursements made in favor of Teodoro Dones while the latter was a Marshal of the former Board of Directors. The President next recounted all the activities of the former Board of Directors in order to connect Dones with the said Board's discredit. González Maldonado himself testified in the Assembly that Dones had offered certain substitute chauffeurs to obtain new busses for their work with the Employer, in return for their joining a group headed by Dones which intended to overthrow the Board of Directors. González asked some of those chauffeurs to testify before the Assembly. They did and corroborated the President's testimony. Finally, González Maldonado testified before the Assembly regarding certain disloyal conduct towards the Union on the part of Dones, culminating with the affirmation that Dones, who constantly kept in touch with the Employer, promised the latter, in case the Union called a strike, to bring sufficient strike-breakers so that the work could go on.

"During the course of the Assembly the envelopes containing the letters summoning Dones were also presented for the consideration of the Assembly and it was testified that the Petitioner had refused to receive them. This was the evidence regarding the contempt that was presented in the Assembly.

"The Assembly of September 14, 1949, at which the workmen who on the previous day had been in the night shift appeared, was presided by Mr. Díaz Mahonés, the Vice President of the Union, because the President, Juan González Maldonado, could not attend. In said Assembly, Mr. Julio Sánchez Barroso made known the charges filed against Dones and asked those

present whether they were aware of Dones' conduct in connection with the Union. Mr. Nery Pacheco then took the floor and 'explained to the Assembly the many times Mr. Dones had been caught slandering and urging the employer to displace the directors of the Union.' The next person to address the Assembly was Mr. Juan D. Lefebre, who 'as the former, accused Mr. Dones of disloyal conduct.' The same documentary evidence used the previous evening was presented in that Assembly. Dones was not present at this Assembly.

"This Board finds that almost the entire evidence offered to the Assembly held during September 13 and 14, 1949, had no connection with the charge of contempt filed against the Petitioner herein."

After citing the oral and documentary evidence on which its findings are based, the Board goes on saying:

"All the testimony and evidence precedingly copied prove beyond any doubt that the Petitioner was tried in the Assembly held on September 13 and 14, 1949, not merely for the charge of contempt, but fundamentally and primordially for acts of indiscipline, treason and disloyal conduct towards the Union that was trying him and for his actions while being a member of the previous Board of Directors of the Union that had been supplanted by the Board of Directors presided by Mr. González Maldonado.

"It is evident, moreover, that Dones did not receive any official notification, either verbal or written, nor any information to the effect that in the Assembly called to try him for the alleged contempt the charges originally filed against him were to be discussed. His letter requesting that his case be taken before the General Assembly referred exclusively to the charge of contempt.

"The evidence presented against the Petitioner challenged not only his loyalty towards the Union, but also his honesty and moral solvency. All this prejudiced those present against the Petitioner; which prejudice is disclosed by the Record upon the Respondent's quoting the exclamations of those present during the Assembly. . ."

We have thoroughly examined all the evidence before the Board and its findings of fact are amply and substantially

supported by said evidence. We are not at liberty to interfere with those findings. As we said in *Labor Relations Board* v. *Namerow*, 69 P.R.R. 77, 81–2:

"We have not been vested with unfettered power to review the findings of fact of the Board. Section 9(2) (a) of the Act provides that 'The findings of the Board as to the facts, if supported by the evidence, shall be conclusive.' Only if there were no evidence in the record in support of the findings of fact of the Board, would we be authorized to hold as a matter of law that the findings of fact, and the order based thereon, could not stand. . . ."

See also, *Rivera* v. *Labor Relations Board*, 70 P.R.R. 5, and *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320. Therefore, there is no basis to hold that the Board committed the errors of fact assigned by the respondent.

■ We shall now discuss the errors of law. The first three may be reduced (as the petitioner does) to a single error: The Board treated the respondent with the severity of a court of justice and the Petitioner with the informality of administrative proceedings, to conclude that the proceedings before the Union were null and void and that, consequently, the suspension from membership was unjustified.

Indeed, the entire controversy raised by these first three errors turns on whether the Board expected the Union to apply during Dones' trial the severity of judicial proceedings, especially the rules of evidence, or whether on the contrary, all it did was to demand that certain basic principles of due process of law be observed during said trial.

It must be recalled that the Board of Directors of the Union tried and punished Dones for the charge of *contempt*, consisting in having failed to appear before the Board despite having been officially summoned and in having refused to receive the summons; that Dones appealed from the punishment imposed on him—one-year suspension from the membership of the Union, which meant a year suspen-

sion from employment—to a General Assembly of the Union in which, by means of a sort of *trial de novo*, the charge of contempt was to be discussed; that this notwithstanding, the Assembly mainly heard evidence on the original charges of treason and disloyalty still pending against Dones, and that on the basis of that evidence and of some incidental evidence on the charge of contempt, the punishment imposed by the Board of Directors was ratified.

The notice served by the Union on Dones to appear before the General Assembly spoke of looking into "your case on appeal, decided by the Board of Directors." That was the *contempt* and not the treason and disloyalty case on which the evidence presented before the General Assembly mainly centered. Thus, the elementary requisite of notice was missing. Dones could not defend himself from certain charges that had not been set for hearing. The fact that evidence against Dones in connection with the contempt was incidentally presented, does not imply that he was given a reasonable and impartial opportunity to defend himself from said charge.[1] To this effect the Board declares:

"Did Teodoro Dones Martínez have a fair hearing before the General Assembly? We pointed out in our findings of fact that Dones appeared at the General Assembly to answer for a

---

[1] In *Dragwa* v. *Federal Labor Union*, 41 A. 2d 32 (N. J., 1945), referring to the proceedings in the cases of expulsion of members, it was stated that:

". . .Such a quasi–judicial proceeding need not be conducted with the formality and established precision of our public courts, *but in material respects the procedure should be reasonably consonant with our accepted conception of due process of law*. Natural justice requires that notice, a hearing, and an opportunity to present defenses must precede condemnation. [Citations.]" (Italics ours.)

In *Harmon* v. *Mathews*, 27 N.Y.S. 2d 656 (1941) a fair trial is described thus:

. . .Undoubtedly, unless some other legal method is provided by its law, before a member can be expelled upon charges from a trade union or any voluntary unincorporated association, he is entitled to have the charges made known to him. In addition, either before the association or a body selected by the members for a trial or hearing, at a time and place

charge of contempt, but that, nevertheless, almost all of the evidence offered against him referred to the charges of treason and indiscipline still pending before the Board of Directors and to his activities as a member of a former Board of Directors hostile to that managing the affairs of the Union. The evidence against Dones regarding the contempt was incidentally presented to the Assembly. Thus, Petitioner herein was tried before the Assembly primordially for charges to elucidate which no hearing had been held before the Board of Directors and which were still pending before said Board, thereby violating the Rules and Regulations of the Union. Such charges, moreover, were not set forth in the notice served upon him to appear before the Assembly. The punishment imposed by the Board of Directors was ratified by an Assembly that was clearly prejudiced against Dones on account of the bulk of evidence of treason, indiscipline and dishonesty heard against him and not on the basis of the incidental evidence regarding the contempt also presented before it."

As to the Board's intervention with the power of labor unions to impose disciplinary measures upon its members, it will be sufficient to recall the wise policy followed by the Board itself, expressed as follows:

". . . A labor organization which is capable of maintaining, in a democratic and orderly manner, discipline among its members, is doing its share to maintain industrial peace. The

---

of which he is given reasonable notice, he is entitled to be confronted by his accusers and the witnesses against him, with reasonable opportunity to question or cross–examine them, examine the evidence, and to answer, explain, defend and present evidence and the testimony of witnesses in his own behalf. *Those rudimentary rights must be observed which are essential to any fair trial.* That does not mean that the procedure known to the common law or defined by the statute or rule for the conduct of the public courts or judicial or quasi–judicial bodies, must be followed. It means that the charges must be presented and the trial or hearing conducted and the decision or determination executed in accordance with the constitution, by–laws and rules of the association. If there are none making provision therefor, or those provided are contrary to accepted concepts of natural justice, then the procedure should be generally analogous to that observed in ordinary judicial proceedings in the public courts so far at least as to promote substantial justice. [Citations.]. . ." (Italics ours.)

imposition of reasonable disciplinary measures as well as the demand of responsibility on the part of its members are necessary factors to make the labor organization a responsible and strong entity to serve as an economic tool, truly effective in the maintenance of harmony and understanding between capital and labor. If we should impair the right of a labor organization to take such internal measures as are necessary to keep the highest degree of cohesion, responsibility and discipline among its members, we would not be carrying into effect the purposes of the statute we must enforce. We have already expressed our intention to interfere the least possible in internal questions of labor organizations. This does not mean, nevertheless, that we are giving a free hand to labor organizations so that arbitrarily and within an absolute discretion, they may impose on their members unreasonable measures, with which the latter cannot comply and, as a consequence, that their employments be affected.' " (*Rivera* v. *Labor Relations Board, supra,* at p. 329.)

Our conclusion is that the Board did not commit the first three errors of law assigned by the defendant.

■ The fourth assignment is without merit. The defendant maintains that the Board could not assume jurisdiction over the complaint against the Union while Dones' appeal to the General Assembly was still pending.

In the first place, the appeal was heard at the assemblies held during September 13, and 14, 1949, whereas the complaint against the Union was filed on March 8, 1950, when the contempt proceeding before the Union had come to an end.

It is true that on September 12, 1949, a day before the hearing of his appeal, Dones had preferred a charge under oath against the Union accusing it of unfair labor practices. At that time the Union was guilty of that practice because despite the fact that Dones notified the Secretary of the Union on September 6 "of his intention of taking the case before a General Assembly and to refrain from taking any action," the Union did not suspend the punishment while the

case was pending before the Assembly, thereby violating its own Rules and Regulations.[2]

 Respondent's contention to the effect that the Decision and Order of the Board is academic, is likewise untenable. It argues that "in the instant case this Order is academic and unnecessary . . . because the contents thereof have already been fulfilled and carried out." However, it does not appear from the record, nor is it alleged by the respondent Union in its brief, that the Union has complied with the affirmative action contained in the Order, including making whole the petitioner Teodoro Dones Martínez for the losses he suffered in his income during the period of suspension from membership, and hence, from employment.

A judgment will be entered providing for enforcement of the order of the Board as prayed for in the petition.

Mr. Chief Justice Todd, Jr., did not participate herein.

---

[2] After authorizing its Board of Directors to impose penalties upon the members of the Union, after preferment of charges, § A of Article IV of the Rules and Regulations of the respondent Union provides that:

"Provided that if the member feels aggrieved by the sanction imposed by the Board of Directors, he shall inform the Secretary within Three (3) Days, after having been served, his intention to take the case before a General Assembly *and to refrain from taking any action*." (Italics ours.) The Labor Relation Board understood, and the respondent has not questioned the point, that the provision as to refraining from taking any action is of a mandatory nature and that the Union was obliged tu suspend the punishment pending the appeal.